# EXHIBIT  D

04-0098
al do        DIVISION 1
             COURT OF APPEALS
             STATE OF ARIZONA
         FILED

         NOV 2 1 2006

         PHILIP G. URRY, CLERK
         By _M E X_

IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION ONE

| | |
|---|---|
| STATE OF ARIZONA, | ) 1 CA-CR 04-0046 |
| | ) |
| Appellee, | ) DEPARTMENT E |
| | ) |
| v. | ) MEMORANDUM DECISION |
| | ) (Not for Publication - |
| BRIAN L. FINKEL, | ) Rule 111, Rules of the |
| | ) Arizona Supreme Court) |
| Appellant. | ) |
| | ) |

Appeal from the Superior Court in Maricopa County
Cause Nos. CR 2001-015515 and CR 2002-001431 (consolidated)

The Honorable Jeffrey S. Cates, Judge

CONVICTIONS AFFIRMED;
SENTENCES AFFIRMED IN PART, MODIFIED IN PART AND REMANDED IN PART

Terry Goddard, Attorney General                          Phoenix
    By Randall M. Howe, Chief Counsel, Criminal Appeals Section
    and Nicholas D. Acedo, Assistant Attorney General
Attorneys for Appellee

James J. Haas, Maricopa County Public Defender           Phoenix
    By Edward F. McGee, Deputy Public Defender

Susan Sherwin, Office of the Legal Advocate              Phoenix
    By Consuelo M. Ohanesian, Deputy Legal Advocate
Attorneys for Appellant

E H R L I C H, Judge

¶1       Brian Leslie Finkel appeals from convictions for 22 counts of sexual abuse following a jury trial and from the sentences imposed.   For the reasons explained below, we affirm Finkel's convictions, and we affirm the sentences for all but four of the offenses.   We modify two of those four sentences, and we remand two convictions for re-sentencing.

*FACTS*[1] *AND PROCEDURAL HISTORY*

¶2        Finkel was a licensed osteopath specializing in reproductive health care.   In late 1995, a Phoenix Police detective received a complaint about Finkel from one of Finkel's patients who claimed that Finkel had inappropriately touched her clitoris during a pelvic examination.   The detective investigated the matter, but no further action was taken.

¶3        In 2000, the same detective received a second patient's complaint about Finkel.   In March of that year, Phoenix Police Detective Art Haduch was assigned to investigate a third patient's complaint about Finkel as well as the prior two complaints.

¶4        In early 2001, Phoenix Police Detective Mark Stribling investigated nine complaints of alleged sexual misconduct committed by Finkel against Finkel's patients and former patients.   This resulted in the filing of an indictment on October 23, 2001 ("the 2001 indictment").   The 2001 indictment concerned these nine victims, and it charged Finkel with sixteen counts of sexual abuse, a class 5 felony, and one count of sexual assault, a class 2 felony. In it, the grand jury alleged that, without their consent, Finkel inappropriately touched, fondled and/or rubbed the victims' vaginal areas and/or touched, massaged, squeezed or pinched the victims' breasts or nipples either before or after an abortion procedure.

_____

[1]    We review the facts in the light most favorable to upholding the verdicts. *State v. Guerra*, 161 Ariz. 289, 293, 778 P.2d 1185, 1189 (1989).

¶5        Finkel was arrested, and there were media reports about the case.  Seemingly as a result of this publicity, Stribling received calls from other patients and former patients of Finkel claiming that they too had been victims of similar conduct.  The resulting investigation of these claims led to the filing of a second indictment on January 25, 2002 ("the 2002 indictment").  This indictment involved 26 victims, and, in it, the grand jury charged Finkel with 43 counts of sexual abuse and seven counts of sexual assault.  Many of the allegations were similar to those in the 2001 indictment, but there were additional allegations that Finkel had inappropriately, and without consent, penetrated the anus of certain victims.

¶6        The two indictments against Finkel involved 35 victims for illegal conduct from 1986 through 2001 as alleged in 67 counts.  As to both indictments, the State filed an allegation of multiple offenses not committed on the same occasion pursuant to Arizona Revised Statutes ("A.R.S.") section 13-702.02 (2001).

¶7        The State filed a motion to consolidate the indictments, and Finkel filed a motion to sever the counts in both indictments.  The trial court denied the State's motion and granted Finkel's motion, whereupon the State filed a motion to reconsider the order denying its motion.  Relying on Arizona Rule of Evidence ("Evidence Rule") 404(c), the State asked the court to review sealed transcripts of the interviews with the victims in both cases.  It also

3

requested an evidentiary hearing to consider testimony from expert witnesses.  Over Finkel's objections to the motion to reconsider and the request for an evidentiary hearing, and after reviewing the transcripts of the interviews, the court, without holding an evidentiary hearing, granted the State's motion to reconsider and ordered the two cases consolidated.

¶8      At trial, all but one of the victims testified in person; one victim, S.C.,[2] testified via a videotaped recording.  In addition, five of Finkel's medical assistants testified, each of whom stated that she had observed Finkel improperly touching a patient's clitoris and/or fondling or groping the patient's breasts.

¶9      Dr. Sydney Wechsler, who had worked in abortion clinics and trained physicians to perform abortions, testified as an expert for the State.  He outlined the proper procedure for conducting a pre-abortion examination, stating that, in his opinion, the clitoris need never be touched unless the patient has complained about her clitoris or if the clitoris appears to be abnormal.  He also explained the appropriate method of palpating the breasts to examine them, and he testified that the nipples should never be squeezed or pinched.  He added that a rectal examination is not necessary in a pre-abortion pelvic examination.

¶10      Dr. Ann Burgess, a professor of psychiatric nursing, testified about the response patterns of victims in the context of

_____

[2]      The victims' initials are used to protect their privacy.

sexual abuse by doctors.

¶11      Finkel denied that he had engaged in any improper touching or misconduct during the examinations that he had conducted. In response to the testimony of his medical assistants, Finkel testified that he had discharged one of his assistants because she had been disruptive and that another one had resigned after he had confronted her about taking drug samples from his office for personal use.  He also maintained that the psychological process of transference commonly occurs in women who have had abortions and that women often blame "the person that got them pregnant or the person that helped them with the abortion" for their problems in order to assuage their guilt.

¶12      Dr. Gordon Davis, a clinical professor of obstetrics and gynecology at the University of Arizona School of Medicine, testified on Finkel's behalf.  He opined that the proper procedure for conducting a breast examination may include squeezing the nipples to check for a discharge.  He further testified that, when he performs a pelvic examination, he palpates the vaginal walls, which may involve inserting his fingers in and out of the vagina, and that he routinely performs rectal examinations on his patients.

¶13      Dr. Thomas Streed, an expert in police procedures and training, testified about the use of effective interrogation techniques to obtain reliable information.  He indicated that a narrative-interview format is preferable to the question-and-answer for-

mat that was utilized in this case.   He elaborated that the former method is "for purposes of accuracy and validity and reliability ... more beneficial" and that, in using the latter method, the interviewer can unwittingly provide information to one person that he or she has received from another person.

¶14    Dr. Elizabeth Loftus, a professor of psychology and social behavior at the University of California – Irvine, testified about post-event information and how memory can be contaminated and distorted by media coverage, communication with others or suggestive interview techniques.   She stated that this can sometimes lead to the creation of false memories.

¶15    Rosann Johnson, Finkel's former attorney, testified that she had been present when Haduch had interviewed Finkel.   She thought that the detective had distorted Finkel's words and misrepresented his statements.

¶16    The trial court dismissed one count of sexual assault and five counts of sexual abuse.   The jury convicted Finkel of 22 counts of sexual abuse.   It was unable to reach a verdict on four counts, and it acquitted Finkel of the remaining counts.

¶17    At sentencing, the trial court dismissed the four counts on which the jury could not reach verdicts.   On Count 48, it suspended the imposition of sentence and placed Finkel on probation for 99 years upon his release from prison.   The court imposed aggravated sentences from 1.75 to 2.75 years on the remaining counts,

declaring that the sentences on counts involving the same victim be served concurrently and the sentences on counts involving different victims be served consecutively.

## DISCUSSION

¶18     Finkel presents four issues regarding the conduct of the trial and five issues pertaining to the sentences imposed.  We address them in order.

1.   *Consolidation of Cases/Refusal to Sever Counts*

¶19     In its motion to reconsider, the State argued that, pursuant to Arizona Rule of Criminal Procedure ("Criminal Rule") 13.3 (a)(1), the offenses could be joined because they were "of the same or similar character."  It also claimed that, pursuant to Criminal Rule 13.4(b), Finkel was not entitled to severance of the counts as a matter of right because "evidence of the other offense or offenses would be admissible under applicable rules of evidence if the offenses were tried separately."

¶20     The State alleged that cross-admissibility of evidence of other offenses pursuant to Criminal Rule 13.4(b) was warranted by Evidence Rule 404(b) to prove motive, intent, knowledge, or absence of mistake or accident.  Alternatively, it argued that, pursuant to Evidence Rule 404(c), evidence of other offenses was cross-admissible to show "that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the offense

7

charged."[3]

¶21      In its motion, the State had asked that the trial court review sealed transcripts of interviews of the 35 victims and Finkel's medical assistants to show that the evidence was sufficient to permit "the trier of fact to find that the defendant committed the other act." Ariz. R. Evid. 404(c)(1)(A).  It also requested an evidentiary hearing to present expert testimony on the issue of sexual propensity.  There, it posited, Dr. Wechsler would testify that Finkel's conduct did not constitute proper medical procedure but was abusive, and Dr. Dennis Doren would testify that sex offenders can exist in the medical profession and that "offending behavior can be disguised amid otherwise normal activity."  The State argued that this evidence "provide[d] a reasonable basis to infer that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the crime charged." Ariz. R. Evid. 404(c)(1)(B).

¶22      Finkel objected to the trial court's consideration of the witness interviews as well as to the evidentiary hearing.  Following argument, the court granted the motion to reconsider, noting

---

[3]      In initially denying the State's motion to consolidate and granting Finkel's motion to sever, the court had ruled that the facts did not "fit neatly within existing case law dealing with [Evidence Rule] 404(b)" and that consolidation would be unfairly prejudicial under [Evidence] Rule 403.  It also found that, based on only the allegations in the indictment, the State had failed to meet its burden of proof that the alleged acts of sexual misconduct had risen to the level of sexual aberration as required under Rule 404(c).

that an evidentiary hearing to consider expert testimony was not necessary.  It found that the information contained in the transcripts of the witness interviews satisfied Evidence Rule 404(c) because it provided sufficient evidence for a "trier of fact to find that [Finkel] committed the other acts" and because it showed that Finkel's acts could be considered "aberrant sexual propensity to commit the crime(s) charged."  It ruled that the probative value of the evidence of other acts was not substantially outweighed by the danger of unfair prejudice.  *See* Ariz. R. Evid. 404(c)(1)(C).

¶23     Finkel argues that the trial court erred in granting the motion for reconsideration, consolidating the cases and refusing to sever the counts.  In particular, he claims that, in accord with *State v. Aguilar*, 209 Ariz. 40, 97 P.3d 865 (2004), the court was required to conduct a joinder hearing at which Finkel's former employees and the victims would testify.  He maintains that such a hearing was necessary pursuant to Evidence Rule 404(c)(1)(A) and *Aguilar* to show that there was clear and convincing evidence that he had committed the other acts.  He also claims that the court erred by failing to conduct an evidentiary hearing to consider expert testimony to show aberrant sexual propensity pursuant to Evidence Rule 404(c)(1)(B).

¶24     The State responds that Finkel waived the issue of severance absent fundamental error because he failed to renew his motion to sever at the close of its case.  *See* Ariz. R. Crim. P. 13.4(c).

9

It also maintains that Finkel waived the issue of an evidentiary hearing to consider expert testimony by not objecting to such a hearing. Finally, the State argues that the trial court did not err in consolidating the cases and that *Aguilar* does not compel a contrary result.

¶25     The trial court's decision on a motion to sever counts is reviewed for an abuse of its discretion. *State v. Hummer*, 184 Ariz. 603, 608, 911 P.2d 609, 614 (App. 1995). The failure to re-new a motion to sever at trial as required by Criminal Rule 13.4(c) serves to waive the severance issue absent fundamental error. *State v. Laird*, 186 Ariz. 203, 206, 920 P.2d 769, 772, *cert. de-nied*, 519 U.S. 1032 (1996). We find no error and, therefore, no fundamental error. *State v. Henderson*, 210 Ariz. 561, 568 ¶23, 115 P.3d 601, 608 (2005) (To obtain relief for fundamental error, there first must be error.).

¶26     In *Aguilar*, the supreme court discussed Evidence Rule 404(c), which codified in part a line of Arizona cases addressing the admission of other-act evidence in cases involving a sexual propensity to commit aberrant acts. 209 Ariz. at 43-45 ¶¶11-17, 97 P.3d at 868-70. The court first considered the types of acts ad-dressed by Evidence Rule 404(c) and held that "the sexual propen-sity exception of Rule 404(c) is not restricted to cases in which the charges involve sodomy, child molestation, or lewd and lascivi-ous conduct. Instead, the exception applies to the sexual offenses

listed in A.R.S. § 13-1420(C), which includes charges involving

nonconsensual heterosexual contact between adults." *Id.* at 48-49

¶28, 97 P.3d at 873-74. Among those offenses are sexual abuse and

sexual assault. *Id.* at 46 ¶21, 97 P.3d at 871.

¶27      The court next considered the conditions that must be met

pursuant to Evidence Rule 404(c) in order for other-act evidence to

be considered in such cases and held that:

> Before admitting other act evidence to show that the de-
> fendant had a character trait giving rise to an aberrant
> sexual propensity to commit the charged sexual offense, a
> trial judge must make three determinations. First, the
> trial court must determine that clear and convincing evi-
> dence supports a finding that the defendant committed the
> other act. Second, the court must find that the commis-
> sion of the other act provides a reasonable basis to in-
> fer that the defendant had a character trait giving rise
> to an aberrant sexual propensity to commit the charged
> sexual offense. Third, the court must find that the evi-
> dentiary value of proof of the other act is not substan-
> tially outweighed by the danger of unfair prejudice, con-
> fusion of the issues, or other factors mentioned in Rule
> 403. In making the determination under Rule 403, the
> court must consider the factors listed in Rule
> 404(c)(1)(C)(i)-(viii). Finally, the rule requires the
> trial judge to make *specific* findings with respect to
> each of the prerequisites for admission under the rule.

*Id.* at 49 ¶30, 97 P.3d at 874 (citations omitted) (emphasis origi-

nal). The court finally considered whether the trial court made

the necessary findings under the facts and applicable legal stan-

dard. *Id.* at ¶32.

¶28      Aguilar was charged in one indictment with the sexual as-

saults of several women. Aguilar admitted that he had engaged in

sexual contact with the women, but he claimed that each woman had

consented. He moved to sever the counts pursuant to Criminal Rule

11

13.4(b).  The trial court denied the motion on the basis that the counts were properly joined pursuant to Criminal Rule 13.3(a)(1) and that evidence as to each victim was cross-admissible pursuant to Evidence Rule 404(c).

¶29     The supreme court observed that, in determining whether there was clear and convincing evidence that each of the acts had occurred, the trial court had relied solely on grand jury testimony consisting of "a police officer's descriptions of the victims' statements."  *Id.* at 49-50 ¶33, 97 P.3d at 874-75.  The court found that this evidence was insufficient pursuant to Evidence Rule 404(c)(1)(A) to determine whether clear and convincing evidence established that Aguilar had committed the other acts.  *Id.* at 50 ¶¶34-35, 97 P.3d at 875.  It further noted that, because the issue of consent to the sexual contact "turn[ed] largely on the credibility of the witnesses[,]" the trial court was unable to resolve the issue without hearing testimony from the victims or considering their prior testimony.  *Id.* at ¶35.

¶30     *Aguilar* is distinguishable from Finkel's case.  In *Aguilar*, the only evidence that the trial court had considered was the "third party's recitation of the victims' claims" before the grand jury.  *Id.* at ¶37.  In contrast, the court in this case considered the victims' own statements and first-person accounts of what they had perceived or observed.  We reject Finkel's argument that a hearing was required to further evaluate their credibility.

12

¶31      We also conclude that the trial court did not err in finding without the assistance of expert testimony that, pursuant to Evidence Rule 404(c)(1)(B), "[t]he commission of the other act provides a reasonable basis to infer that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the crime charged." As the comment to Evidence Rule 404(c) states, a court may admit other-act evidence, even if dissimilar or remote, "by way of expert testimony or otherwise, to support relevancy" but that the requirement of "expert testimony in all cases of remote or dissimilar acts is hereby eliminated."

¶32      The State's offer of proof regarding the expert testimony and the witness interviews provided the trial court with a reasonable basis upon which to conclude that Finkel had a character trait giving rise to an aberrant sexual propensity to commit the offenses charged. The court made the requisite findings that the requirements of Evidence Rule 404(c) had been met, and it thus did not err in denying the motion to sever and consolidating the cases pursuant to Criminal Rules 13.3(a)(1) and 13.4(b).[4]

    2.   *Dr. Burgess' Testimony*

¶33      Before trial, Finkel filed a motion *in limine* to preclude the expert testimony of Dr. Burgess and another expert on the basis

---

[4]   We reject Finkel's contention that the failure to hold a joinder hearing violated the Confrontation Clause. The right of confrontation and cross-examination is a trial right, not a right involving pretrial issues. *Pennsylvania v. Ritchie*, 480 U.S. 39, 52 (1987).

13

that their opinions would constitute inadmissible sex-offender pro-
file evidence.  The State responded that the witnesses would tes-
tify about the common reactions of victims of sexual abuse and the
general characteristics of sex offenders but that they would not
express an opinion about the veracity of a particular victim.  At
argument, the State explained that Dr. Burgess was a "blind ex-
pert," had no personal knowledge of the facts of the case and would
only testify in general about the responses of victims to sexual
abuse in a physician-patient setting.  The trial court granted the
motion as to one expert but denied it as to Dr. Burgess.

¶34      At trial, Dr. Burgess testified about the common re-
sponses of patients who had experienced "unwanted sexual contact"
during a medical examination.  She did not testify about the char-
acteristics of a sexual offender, and she stated that she had no
knowledge about the particular facts of the case.

¶35      Finkel claims that the trial court abused its discretion
in allowing Dr. Burgess' testimony because it constituted inadmis-
sible rape-trauma-syndrome" evidence, citing *State v. Huey*, 145
Ariz. 59, 62-63, 699 P.2d 1290, 1293-94 (1985) (testimony of a type
of post-traumatic stress disorder that describes the stages of rape
trauma, the victim's mental state and a conclusion that the victim
had been raped).  In the alternative, he claims that her testimony
constituted offender-profile evidence, citing *State v. Lee*, 191
Ariz. 542, 545 ¶12, 959 P.2d 799, 802 (1998) (testimony of charac-

14

teristics of persons engaged in a particular type of crime).

¶36      Generally, it is a decision within the discretion of the trial court whether expert testimony will aid the jury in understanding an issue outside their common experience under Evidence Rule 702. *State v. Moran*, 151 Ariz. 378, 381, 728 P.2d 248, 251 (1986). *Id.* Similarly, it is within the discretion of the court to weigh the probative value of the testimony against the danger of unfair prejudice under Evidence Rule 403.

¶37      Dr. Burgess' testimony did not constitute rape-trauma-syndrome evidence or offender profile evidence. Rather, she testified about the characteristic responses of sexual-abuse victims to explain behavior that might otherwise seem inconsistent or questionable to a juror. Such expert testimony of a generalized nature has been held admissible to aid the jury in understanding the issues. *Id.* at 384, 728 P.2d at 254. As stated in *State v. Tucker*, 165 Ariz. 340, 346, 798 P.2d 1349, 1355 (App. 1990),

> [A]n expert witness may testify about the general charac-
> teristics and behavior of sex offenders and victims if
> the information imparted is not likely to be within the
> knowledge of most lay persons.  The expert may neither
> quantify nor express an opinion about the veracity of a
> particular witness or type of witness.  The expert may
> not explain that, based upon the characteristics and be-
> havior he has described, a person's conduct is consistent
> or inconsistent with the crime having occurred.

¶38      Dr. Burgess' testimony fell within the parameters of *Moran* and *Tucker*.  She provided information to the jurors that was outside the realm of their ordinary knowledge and experience.  She

15

neither testified about the veracity of individual victims nor gave an opinion as to the likelihood that a crime occurred based upon the general characteristics.  We find no error.

    3.   *Dr. Loftus' Testimony*

¶39      Before trial, the State filed a motion *in limine* to limit Dr. Loftus' testimony to general characteristics of memory contamination and suggestion and to limit her testimony concerning the facts of the case in accordance with *Moran* and *Tucker*.  The court granted the motion and ruled that Dr. Loftus could not answer questions based on the specific facts of the case.

¶40      After Dr. Loftus testified, Finkel made an offer of proof as to the precluded testimony.  He indicated that she would have testified that she had reviewed the transcripts of the interviews taken by Haduch and Stribling and that, as to particular witnesses, the detectives had supplied information and made suggestive comments to them.  Finkel further indicated that Dr. Loftus would have opined that the interview process had been biased and that there was a risk that the witnesses' memories had thus been altered or contaminated.

¶41      Finkel claims that the trial court abused its discretion in granting the motion *in limine* and restricting Dr. Loftus' testimony.  He relies on *State v. Speers*, 209 Ariz. 125, 129 ¶14, 98 P.2d 560, 564 (App. 2004) ("The admissibility of expert testimony in cases involving sex crimes is subject to the same rules of evidence

applicable to all expert testimony.").

¶42      Speers was charged with child molestation and sexual abuse.  The trial court precluded him from introducing expert testimony "with respect to suggestive interview techniques and its influence on children's memories."  This court concluded that the trial court had erred in refusing to allow this evidence "for the jury's consideration in evaluating the children's testimony."  *Id.* at 132 ¶25, 98 P.3d at 567.  We specifically held that "an expert witness for the defense cannot give an opinion that the victim made false allegations of molestation, because such testimony directly addresses the credibility of the victim.  However, the fact that limited expert testimony regarding proper interview techniques indirectly involves the child's credibility does not render it inadmissible."  *Id.* at 131 ¶23, 93 P.3d at 566 (citation omitted).

¶43      In this case, the trial court correctly allowed limited, general testimony concerning the risks of suggestive interview techniques to explain the possibility that the victims may have had false memories.  However, because such an expert cannot give an opinion as to the veracity or reliability of a witness' testimony, the court did not err in prohibiting Dr. Loftus from testifying about the possibility of implanted memories of particular victims.

    4.   *Admission of Videotaped Testimony*

¶44      S.C. filed a motion to quash her trial subpoena on the basis that her mental and emotional condition made it extremely

difficult for her to testify.  Pursuant to Evidence Rule 611, the trial court denied the motion to quash but ordered that S.C. appear at a videotaped deposition.  Finkel unsuccessfully objected to such a procedure, claiming that it violated his right to confront witnesses, but, after the deposition, the following colloquy occurred:

> THE COURT:  What about, you want to put something on the record --
>
> [Finkel's counsel] MR. GIERLOFF:  Right; with [S.C.].
>
>     I'm not sure how much was captured on videotape. She was permitted to both receive and make a personal telephone call, allowed to receive it while on the witness stand on her cell phone, and then was allowed apparently to return it, and she was excused from the courtroom for a certain period of time, right in the middle of her testimony.
>
>     And I wanted to make sure the record reflected that she was afforded that treatment, and I guess the video would speak for itself.  But I would like to also put on the record, that she did not appear the least bit fragile while she was testifying.
>
>     And that, well, that the whole treatment which she was afforded seemed to be unjustified by the facts, and I believe it impinges upon Doctor Finkel's right of confrontation.
>
> THE COURT:  Do you want to say anything?
>
> [Prosecutor] MR. GADOW:  No.
>
> THE COURT:  Okay.  My ruling, I gave after she appeared in my office.  And there was quite a contrast to her demeanor when she was on the stand.  I feel it was justified at the time.
>
>     It may be that the difference in demeanor was a result of her not being here in front of a jury.  It may have been a different situation.  I guess, you may want to think whether you want her to testify live under the circumstances.

MR. GIERLOFF:  I've been thinking about it.

THE COURT:  Would you like her to testify live?  There are two issues; bring her back here live to respond to questions the jurors may have.

MR. GIERLOFF:  I think at a minimum I would ask that.

THE COURT:  And I've got no problem with that.  And do you want to start over again?

MR. GIERLOFF:  I don't know.  I'm unprepared to make [a] decision.

THE COURT:  Why don't you think about it.  My inclination is, I don't see any problem forcing her to come back and respond to questions spontaneously but --

MR. GADOW:  Your Honor, you know, my concern would be that now she thinks this is over in terms of her testimony.

THE COURT:  I told her she may well be back to answer questions.

MR. GADOW:  Answer questions is one thing, but I do think when I met with her, her demeanor would have been much different had she been testifying in front of the jury, because I think she would be a lot more emotional and more -- her demeanor would be more closer to how she was in the judge's chambers rather than how she was on Friday.

THE COURT:  I kept -- with the exception of the first minute or so when we had counsel questioning, I locked the camera on her so the camera was locked on her.  You're going to see in there that she appeared to be quite relaxed.

MR. GIERLOFF:  Yes.

THE COURT:  When, I think it was -- somebody was conferring, she was looking at her friend who was in the back of the courtroom.

MR. GIERLOFF:  Uh-huh.

THE COURT:  And she is kind of smiling at her, almost a silent communication.  You ought to think about it.  You

19

may not want her to appear any differently than she ap-
peared on the video.

MR. GIERLOFF:  Right.

THE COURT:  Okay.  Anyhow, we'll take that up.. Now we'll
take that up later.

¶45        The following day, although S.C. was available, Finkel
did not request that she testify in person.   Instead, the trial
court played the videotape for the jury, allowed the jurors to ask
questions in person and permitted counsel to ask follow-up ques-
tions.   Finkel claims that this use of the videotaped deposition
violated his federal and state constitutional rights to cross-
examine witnesses.

¶46        The record clearly reflects that the trial court offered
to reconsider its ruling allowing the videotaped deposition of S.C.
in favor of requiring her to testify in person before the jury.
Although Finkel did not make an affirmative decision regarding the
court's offer, he did not further object to the presentation of the
videotape at trial.   He has thus waived the issue absent fundamen-
tal error.  *Henderson*, 210 Ariz. at 567 ¶19, 115 P.3d at 6C7.

¶47        To establish fundamental error, Finkel must show that any
alleged error was fundamental and caused him prejudice.   *Id.* at ¶20
(defining prejudice as an error of such magnitude that a defendant
could not receive a fair trial).   Finkel has established neither
fundamental error nor prejudice.   Nothing in the record suggests
that the use of S.C.'s videotaped deposition followed by jury and

counsel's questions denied Finkel the right to a fair trial.

     5.   *Imposition of Probation on Count 48*

¶48     For Count 48 of the 2002 Indictment, the trial court suspended the imposition of sentence in favor of a term of probation of 99 years, citing A.R.S. § 13-902(E)(Supp. 2002). However, the acts alleged in Count 48 occurred in 1986, and § 13-902(E) did not become effective until January 1, 1994. Finkel argues and the State agrees that this sentence is illegal.

¶49     A defendant must be sentenced under the laws in effect when the crime was committed, and subsequent changes in sentencing statutes are not applied retroactively. A.R.S. § 1-246 (2001); *State v. Stine*, 184 Ariz. 1, 2-3, 906 P.2d 58, 59-60 (App. 1995). Therefore, as to this count, we must remand the matter to the trial court to resentence Finkel in accord with the sentencing statutes in effect when the offense was committed.[5]

     6.   *Sentences on Counts 10, 31 and 32*

¶50     In the sentencing minute entry, the trial court imposed an aggravated sentence of 2.75 years each on Counts 10, 31 and 32 of the 2002 Indictment. However, at the sentencing, the court imposed an aggravated sentence of 1.75 years on Counts 31 and 32. "[W]hen there is a discrepancy between the oral pronouncement of sentence and the minute entry that cannot be resolved by reference

---

[5]    We reject the State's suggestion that, due to the sentencing error on this count, we should remand the sentences on the other counts in order to allow the court to reconsider the sentences as a whole. There is no authority for this.

21

to the record, a remand for clarification of sentence is appropriate." *State v. Bowles*, 173 Ariz. 214, 216, 841 P.2d 209, 211 (App. 1992) (emphasis omitted).   Both parties agree that the 2.75-year sentences on Counts 10, 31 and 32 are illegal because the court enhanced those counts pursuant to A.R.S. § 13-702.02 and the maximum allowable sentence for each count under the applicable sentencing provisions is 2.5 years.   We therefore modify the sentences on Counts 31 and 32 to 1.75 years each, and remand Count 10 for resentencing.   *See* A.R.S. § 13-4037 (2001).

      7.   *Concurrent versus Consecutive Sentences*

¶51      Finkel argues that, because the trial court did not specify whether the sentences for Count 2 in the 2001 Indictment, for Count 10 in the 2002 Indictment, for Counts 17 and 18 in the 2002 Indictment, and for Counts 37 and 38 in the 2002 Indictment are to run concurrently with or consecutively to each other, the sentences for those six offenses should be concurrent and this court should correct the record accordingly.   The State responds that the court intended that the sentences on these six counts be consecutive, and that, if its intent is not clear, then, pursuant to A.R.S. § 13-708 (2001), the sentences are to be consecutive.

¶52      Our review of the record shows that the trial court intended that the sentences for crimes involving the same victim be served concurrently and that the sentences for offenses involving different victims be served consecutively.   Therefore, the sentence

for Count 2 in the 2001 Indictment, the sentence for Count 10 in the 2002 Indictment, the concurrent sentences for Counts 17 and 18 in the 2002 Indictment, and the concurrent sentences for Counts 37 and 38 in the 2002 Indictment are to be served consecutively.

8.   *Improper Aggravating Factors*

¶53     The trial court found as aggravating factors that Finkel had "caused emotional harm to his victims, including depression, humiliation and fear, ha[d] caused physical harm to some of them," that he violated his position of trust as a doctor, that his lack of remorse and failure to accept responsibility did "not bode well for rehabilitation" and that he had committed the acts over an extended period of time.  Finkel contends that the court's use of three of these aggravating factors was improper.

¶54     First, Finkel claims that the trial court's consideration of physical harm to the victims as a factor separate from emotional harm was improper because both emotional and physical harm are included within A.R.S. § 13-702(C)(9)(2001) and also because there is no evidence that he caused physical harm to any victims.  Second, he contends that, because he denied guilt, his lack of remorse cannot be used as an aggravating factor because this violates his constitutional privilege against self-incrimination.  *See State v. Hardwick*, 183 Ariz. 649, 656, 905 P.2d 1384, 1393 (App. 1995).  Finally, he maintains that aggravating his sentences because he committed the acts over a long period of time was improper because the

23

repetitive nature of the offense was already enhanced by A.R.S. §
13-702.02 and such "double counting" is prohibited by *State v. Al-
varez*, 205 Ariz. 110, 114 ¶¶11-13, 67 P.3d 706, 710 (App. 2003)
(When court enhanced sentences pursuant to A.R.S. § 13-702.02, it
was improper to aggravate the sentences because there were six vic-
tims in separate incidents and the same factor was essentially ap-
plied twice.).  The State responds that Finkel failed to object to
the aggravating factors, that he waived any objection to them ab-
sent fundamental error and that there was no error.

¶55      First, as to the physical harm to some of the victims,
the trial court considered the emotional and physical harm to the
victims as one aggravating factor, not two separate factors.  Fur-
ther, there is sufficient evidence that, as to some of the victims,
Finkel caused physical as well as emotional harm as a result of his
sexual abuse.

¶56      Second, because Finkel chose to speak at the sentencing
proceedings, the privilege against self-incrimination does not pro-
hibit the trial court from considering his own statements at sen-
tencing as a basis for finding that he lacked remorse.  *See e.g.*,
*State v. Henderson*, 209 Ariz. 300, 312 ¶43, 100 P.3d 911, 923 (App.
2004) ("This is not a circumstance in which a defendant has re-
mained silent.  Thus, we need not consider whether the Fifth Amend-
ment's right to silence precludes the use of lack of remorse as an
aggravator. … This is a case where the trial judge affirmatively

24

considered the defendant's own statements made to her at sentencing as a basis for finding a lack of remorse."), *aff'd in part, vac. in part on other grounds*, 210 Ariz. 561, 115 P.3d 601 (2005); *see also State v. Greene*, 192 Ariz. 431, 441 ¶40, 967 P.2d 106, 116 (1998) ("We agree that the statements [of the defendant] constitute bragging and show a tremendous lack of remorse.").

¶57     Finkel stated that he felt remorse for the victims because he did not understand their feelings and needs and because they had been traumatized by the trial.  The trial court was not persuaded by his statements.  It believed that Finkel thought that the prosecution had been politically motivated because he had performed abortions, that Finkel thought that it was he who had been victimized and that he was not remorseful.  We will defer to the court in the better position to assess whether a defendant is truly remorseful.  *See State v. Calderon*, 171 Ariz. 12, 13-14, 827 P.2d 473, 474-75 (App. 1991).

¶58     Finally, we find no error in aggravating the sentences because the offenses occurred over an extended period of time.  The trial court did not "double-count" by enhancing the sentences pursuant to A.R.S. § 13-702.02 and aggravating them on the basis of multiple victims as was the case in *Alvarez*.  It imposed aggravated sentences because the offenses were not isolated instances of sexual abuse but, rather, part of a prolonged and extensive pattern of sexual misconduct.  This reflected Finkel's criminal character and

25

history, both of which were proper aggravating factors. *State v. Shuler*, 162 Ariz. 19, 21, 780 P.2d 1067, 1069 (App. 1989).

    9.  *Violation of* Blakely v. Washington

¶59    Finkel claims that he was entitled to a jury trial on the aggravating factors pursuant to *Blakely v. Washington,* 542 U.S. 296 (2004). We disagree.

¶60    The trial court's finding that Finkel committed the offenses over an extended period of time is inherent in the verdicts because the jury's findings included the dates when the offenses occurred. Under *State v. Martinez,* 210 Ariz. 578, 585-86 ¶¶26-27, 115 P.3d 618, 625-26, *cert. denied,* 126 S.Ct. 762 (2005), if the trial court finds the existence of one aggravating factor that is *Blakely* compliant, it is permitted to find other aggravating factors.

CONCLUSION

¶61    For the foregoing reasons, we affirm Finkel's convictions. We also affirm the sentences on all but four counts, those being Counts 10, 31, 32 and 48. On Counts 31 and 32, we modify the sentences. On Counts 10 and 48, we remand for resentencing.

 

                                                  _____
                                              SUSAN A. EHRLICH, Judge

CONCURRING:

_____
JON W. THOMPSON, Presiding Judge

                                        _____
                                        G. MURRAY SNOW, Judge

R E C E I V E D

NOV 2 2 2006

CRIMINAL APPEALS
ATTORNEY GENERAL

# EXHIBIT E

Consuelo M. Ohanesian, AZ Bar # 009232
Deputy Legal Advocate
3800 North Central Avenue, Suite 1500
Phoenix, Arizona 85012
(602) 506-4111
Firm State Bar No. 441200
Attorney for Appellant

## IN THE COURT OF APPEALS
## STATE OF ARIZONA
## DIVISION ONE

| | |
|---|---|
| STATE OF ARIZONA, | 1 CA-CR 04-0046 |
| APPELLEE, | MARICOPA COUNTY |
| | SUPERIOR COURT |
| vs. | NOS. CR 2001–015515 |
| | CR 2002–001431 |
| BRIAN LESLIE FINKEL, | |
| APPELLANT. | **PETITION FOR REVIEW BY** |
| | **ARIZONA SUPREME COURT** |

The Appellant, through undersigned counsel, pursuant to Arizona Rules of

Criminal Procedure, Rule 31.19, petitions the Arizona Supreme Court to review the

decision of the Arizona Court of Appeals, Division One, entered on November 21,

2006. A copy of the Memorandum Decision is attached as Exhibit A.

# I. ISSUES PRESENTED FOR REVIEW

1.     Did the trial court reversibly err when it joined all 67 counts in the instant sex offense prosecution, upon the theory that all counts were cross-admissible admissible against each other as "other acts," pursuant to Rule 404(c) of the Arizona Rules of Evidence, first because the trial court did not personally evaluate the credibility of the complainants as required by the holding of the Arizona Supreme Court in *State v. Aguilar*, 209 Ariz. 40, 97 P.3d 865 (2004), and secondly, because before ruling, the trial court did not receive expert testimony on the limits of proper touching in gynecological procedures?

2.     Did the trial court reversibly err when it permitted Dr. Ann Burgess to testify about responses of victims to sexual abuse, when this testimony amounted to nothing more than "rape trauma syndrome" and "offender profile" evidence?

3.     Did the trial court reversibly err and deny Dr. Finkel due process of law under both the Arizona and United States Constitutions, when it barred the defense from calling defense expert Dr. Elizabeth Loftus to testify about the risk of implanted memories?

4.     Did the trial court reversibly err and deny Dr. Finkel his rights to confrontation and a public trial, secured him by the Arizona and United States Constitutions, when it permitted the witness Shelly Cluff to testify by means of video-taped deposition, without first establishing that Cluff was unavailable, as required by the holding of the United States Supreme Court in Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004)?

5.     Did the trial court reversibly err when it sentenced Dr. Finkel to "lifetime probation, 99 years," on Count 48, when the maximum probationary term available for that count at the time of its commission was three years? **Not presented for review in this appeal as the court of appeals remanded for resentencing.**

6.     Did the trial court reversibly err when it issued a minute order on Counts 31/32 in CR 2002–001431 imposing concurrent sentences of 2.75 years, when these two counts were not susceptible to treatment as multiple offenses not committed upon the same occasion, so that the maximum allowable term for each was no more than 2.5

years, and when the transcript of the oral pronouncement of sentence reflects that the court actually imposed a sentence of 1.75 years?  **Not presented for review in this appeal as the court of appeals remanded for resentencing.**

7.     Did the trial court reversibly err in failing to issue a sentencing minute order that explained that Dr. Finkel's sentences on Counts 10 and 37/38 in CR 2002–001431 were actually concurrent to other sentences imposed on other counts, so that his total sentence was a string of 11 blocks of consecutive terms, and not a string of 13 blocks of consecutive terms?

8.     Did the trial court reversibly err when it aggravated all of Dr. Finkel's sentences, first by citing illegal aggravating circumstances, or circumstances not supported by the evidence, and secondly because it did not grant him a jury trial on sentencing aggravators, contrary to the jury trial requirements of the United States Constitution and the Arizona Constitution, and the holding of the United States Supreme Court in Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531 (2004)?

## II. MATERIAL FACTS

The State accused Dr. Brian L. Finkel of 67 counts of misconduct toward his patients, over a period spanning 18 years.  (I-1 and I-68).  Fifty-nine counts accused Dr. Finkel of Class Five felony sexual abuse; eight counts accused him of Class Two felony sexual assault.  (*Id.*).  Prior to consolidation, the State sought enhancement by alleging that the various counts constituted "offenses not committed upon the same occasion, but consolidated for trial," despite the fact that fifteen of the sixty-seven counts antedated the January 1, 1994 enactment of A.R.S. § 13-702.02, the statute authorizing that sort of enhancement.  (I-27 and I-89).

A jury convicted Dr. Finkel of twenty-two counts of sexual abuse.  (M.O. 12-2-

3

03 and I-717).[1]   Of the remaining forty-five counts, one sexual abuse case was dismissed prior to trial, and five sexual abuse cases and one sexual assault charge were dismissed pursuant to a Rule 20 motion at the close of the State's case; the jury reached no verdict on four counts of sexual abuse, and acquitted Dr. Finkel of the remaining thirty-four counts, including all remaining charges of sexual assault. (M.O.s 8-11-03; 10-27-03; 12-2-03).  The court dismissed the four hung counts.  (M.O. 1-2-04).

The court imposed 99 years probation on Count 48 in CR-2002-001431, to commence upon Dr. Finkel's "total release from DOC on Counts 33 and 34 in CR-2002-001431." (M.O. 1-2-04).  From the sentencing minute entry, it appears that the court imposed prison terms on the 21 remaining counts, arranging the sentences so that counts involving the same victim on the same date would run concurrently, but so that all counts involving different victims or occurring on different dates would run consecutively.   (*Id.*).  The sentencing minute order and the transcript of the oral pronouncement of sentence differ.  The sentencing minute order on Counts 31 and 32 in CR-2002-001431 indicates that the court imposed concurrent, aggravated terms of 2.75 years, while the transcript of the oral pronouncement shows the sentences were concurrent, aggravated terms of 1.75 years.  (*Id.*; R.T. 1-2-04, pp. 18-19).

---

[1] The minute order of 12-2-03 states that the jury acquitted Dr. Finkel of Count 48 in CR-2001-015515, when the  verdict on that count shows a conviction for sexual abuse of Cluff.  (I-719).

The oral pronouncement of sentence was further confused by stated concurrent, aggravated terms of 2.75 years on Counts 6 and 7 in CR-2001-015515, to run consecutively to Counts 13 and 14 in that same cause number although the jury found Dr. Finkel not guilty of Counts 6 and 7 in CR-2001-015515. (R.T. 1-2-04 at 20; R.T. 12-2-03 at12-14; I-663, I-664; and M.O. 12-2-03).[2] The court divided the seventeen remaining counts into eleven groups, and imposed eleven sets of consecutive, aggravated terms of 2.75 years to each group. (M.O. 1-2-04). Dr. Finkel received either 0 years or 2.75 years on Counts 6 and 7 in CR-2001-015515, and 1.75 or 2.75 years on Counts 31 and 32 in CR-2002-001431, to be followed by 99 years of consecutive probation on Count 48 in that same cause number and twelve consecutive terms of 2.75 years, for a grand total of either 34.75 years or 35.75 years or 38.5 years, depending upon how one reads the record. (*Id.* and R.T. 1-2-04, pp. 16-23). The court awarded Dr. Finkel 118 days of presentence incarceration credit on Counts 31 and 32 in CR-2002-001431 and no presentence credit on any other counts. (M.O. 1-2-04).

The court found upward departure from the presumptive sentences (1.5 years on Counts 31 and 32 in CR-2001-015515, and 2.25 years on all other counts, except Count 48 in CR-2002-001431) justified by several factors. (R.T. 1-2-04, pp. 17-18).

---

[2] The court could not have mistakenly meant to sentence Dr. Finkel on Counts 6 and 7 in CR-2002-001431, because it had earlier directed verdicts of not guilty on those two counts. (M.O. 10-27-03).

Among these were the fact that Dr. Finkel caused his victims emotional harm, and that

he caused some of them physical harm. (*Id.*). The court also cited abuse of a position

of trust as a physician, lack of remorse, and commission of crimes over a span of some

15 years. (*Id.*). The court found that this latter factor offset Dr. Finkel's lack of any

prior criminal record. (*Id.*). In addition to the probation and prison terms described

above, the court also ordered Dr. Finkel to pay restitution in the total amount of

$11,708.88, allocating $2,504.88 to Erlinda Diaz and $11,708.88 to the Maricopa

County Victims' Compensation Fund. (M.O. 1-2-04).

## III. ARGUMENT

**1. THE TRIAL COURT ABUSED ITS DISCRETION AND REVERSIBLY ERRED IN JOINING COUNTS IN THIS SEX OFFENSE PROSECUTION ON THE THEORY THAT ALL COUNTS WOULD BE CROSS-ADMISSIBLE AS "OTHER ACTS," PURSUANT TO RULE 404(C) OF THE ARIZONA RULES OF EVIDENCE, FIRST, BECAUSE BEFORE RULING THE TRIAL COURT DID NOT PERSONALLY EVALUATE THE CREDIBILITY OF THE COMPLAINANTS, AS REQUIRED BY *STATE V. AGUILAR*; AND SECONDLY, BECAUSE BEFORE RULING, THE COURT DID NOT RECEIVE EXPERT TESTIMONY ON THE LIMITS OF PROPER TOUCHING IN GYNECOLOGICAL PROCEDURES.**

Under *State v. Aguilar*, 209 Ariz. 40, 97 P.2d 865 (2004), joinder of Dr.

Finkel's sixty-seven counts and thirty-five alleged victims constituted reversible error

for several reasons.

First, as in *Aguilar*, lack of consent was an element of every one of the charges

against Dr. Finkel that the State sought to cross-admit and join.  Because Dr. Finkel denied any sort of wrong-doing, the trial court had to determine the credibility of all thirty-five accusers to satisfy the requirement imposed by Rule 404(c)(1)(A) that the court find by clear and convincing evidence that the accused committed the acts charged.  According to *Aguilar*, a trial judge can make this assessment only by hearing from the alleged victims in person, or by considering their former testimony.  Here, the court had nothing more than transcripts of unsworn police interviews of former patients and employees.

Secondly, the requirement that the court determine witness credibility in joinder hearings comports with the confrontation clause requirements in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354 (2004).  *Crawford* makes it clear that the state cannot rely upon hearsay evidence to convict the accused, but instead must produce live witness testimony.  Because *Aguilar* demands that the trial court personally assess the credibility of witnesses in a joinder hearing, such hearings have now taken on the primary attribute of a trial:  assessment of the truthfulness of a defendant's accusers with the opportunity for cross-examination.  The trial court's review of police interviews with the victims and Dr. Finkel's assistants does not meet that standard.

7

Third, the accusations of the thirty-five victims do not satisfy Rule 404(c)(1)(B), which requires that the state "provid[e] a reasonable basis to infer that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the crime charged." It is particularly crucial in this case because all thirty-five victims, as gynecological patients, had consented, to some degree, to the touching of their breasts and genitalia, as necessary incidents to their medical treatment. In fact, Dr. Finkel obtained this consent from all his patients in writing. (Exhibits 57–67, 69, 71, 72, 89, 97, 100, 108, 113, 115, 118, 124, 127, 133, 136, 143, 146, 147, 151, 154 and 206). Except for Count 32 in CR 2002–001431 involving Gretchen O'Hair Janovetz (who claimed that Dr. Finkel grabbed her breast in the hallway of his office after her procedure had concluded), this was not a case in which the victims accused Dr. Finkel of having had intimate contact other than during the rendition of medical treatment. (R.T. 8/20/03, at 141–44).

The issue, thus, was whether Dr. Finkel's conduct vitiated patient consent, and the trial court could not have made this determination without having heard expert gynecological testimony on the extent of touching necessary for the medical treatment the victims sought. The interviews of Dr. Finkel's medical assistants were meaningless. There was no foundation to establish that they had the slightest idea what

8

constituted proper gynecological practice.  Furthermore, the State did not present them in person or offer their former testimony, under oath and subject to cross-examination. The court had no more opportunity to assess their credibility than it did to assess the credibility of the victim-witnesses.

The ability to cross-examine these witnesses was critical because Dr. Finkel had fired the medical assistants, Crystal Sykes and Karen Corbett, for cause, and Dawn Normoyle had resigned after an accusation that she was pilfering drugs and shorting patients on pain medication and retaining it for herself.  (R.T. 10/8/03 at 46–51; R.T. 10/23/03, a.m., at 20–21).  A fourth assistant, Renee Imrisek, felt that Dr. Finkel had been making improper advances toward her.  (R.T. 9/8/03 at 84).  In addition, when they first contacted the authorities, Sykes and Corbett were attempting to recover profit-sharing monies from Dr. Finkel.  (R.T. 8/28/03 76–89, 108, 120; R.T. 10/8/03 at 23–25).  Thus, four of the six medical assistants whose interview transcripts the court read may have had a bias against Dr. Finkel, and at least two of them had financial interests or motives in bringing legal pressure to bear upon him.  These are considerations with a profound impact on witness credibility.  Livermore, Bartels and Hammeroff, LAW OF EVIDENCE, 4th Ed. (2000), § 608.5, 221–24.

The trial court's joinder order violated Dr. Finkel's right to severance of counts

under Rule 13.4 of the Arizona Rules of Criminal Procedure. The trial court failed to

consider proof sufficient to establish that Dr. Finkel committed the alleged offenses, as

required by Rule 404(c)(1)(A) of the Arizona Rules of Evidence, the trial court also

failed to consider proof necessary to show that Dr. Finkel's conduct showed an

emotional propensity for sexual aberration. This Court should reverse the convictions

and sentences and grant Dr. Finkel a new trial.

**2.  THE TRIAL COURT ABUSED ITS DISCRETION AND REVERSIBLY ERRED WHEN IT PERMITTED DR. ANN BURGESS TO TESTIFY ABOUT THE RESPONSES OF SEXUAL ABUSE VICTIMS BECAUSE, IN THE END, THIS AMOUNTED TO NOTHING MORE THAN PROHIBITED "RAPE TRAUMA SYNDROME" AND "OFFENDER PROFILE" EVIDENCE.**

Dr Burgess testified about "rape trauma syndrome," evidence of which is

admissible only where there is other evidence of sexual assault. Such expert testimony

must concern only the issue of consent. *State v. Huey*, 145 Ariz. 59, 699 P.2d 1290

(1985). The issue here was not consent, however, but whether the touchings had

occurred at all, and so the testimony was not admissible under *Huey*.

Furthermore, as Dr. Burgess' testimony and examples dealt with the abuse of

patients by doctors, it constituted impermissible "offender profile" evidence. Dr.

Burgess told the jury, in no uncertain terms, that doctors can easily molest their women

patients with little fear of exposure unless the patients have a good support system or

the encouragement of the media. Given the publicity attendant upon Dr. Finkel's arrest

and prosecution, it can hardly have been lost on the jury that Dr. Burgess was talking about the very sort of behavior and accusations that occurred in this case.  The trial court abused its discretion and reversibly erred when it permitted Dr. Burgess to offer this testimony.

**3.  THE TRIAL COURT REVERSIBLY ERRED WHEN IT BARRED THE DEFENSE EXPERT, DR. ELIZABETH LOFTUS, FROM OFFERING TESTIMONY ABOUT THE RISK OF IMPLANTED MEMORIES, AND IN SO DOING, DENIED DR. FINKEL DUE PROCESS OF LAW, CONTRARY TO THE PROTECTIONS OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 2, § 4 OF THE ARIZONA CONSTITUTION.**

In response to the State's motion *in limine* to bar testimony by defense expert Dr. Elizabeth Loftus about the credibility of specific witnesses or victims in this case, the trial court ruled that Dr. Loftus could testify only as a "cold expert" on the subjects of memory and its malleability and susceptibility to contamination.  (R.T. 10/16/03 at 4).  The court directed that Dr. Loftus not offer opinions concerning the specific facts of the instant case and it precluded counsel from asking hypotheticals drawn from the facts of Dr. Finkel's case, as this would invade the province of the jury.  (*Id.*).

This Court has held it reversible error to bar the defense from calling properly qualified experts to rebut "propensity evidence" by explaining to the jury the dangers of contaminated memories and suggestive interviewing practices in child molesting and child pornography cases. *State v. Speers*, 205 Ariz. 125, 98 P.3d 560 (App. 2004).

11

This Court found that, as a matter of due process, Speers had the right to offer relevant evidence challenging the validity and reliability of the state's 404(c) evidence finding that a defendant should be able to explore with the jury "how the victim came to relate the facts which led to the bringing of the criminal charges."

Analytically, however, there is little to distinguish child sexual abuse from the sort of charges lodged against Dr. Finkel. If Dr. Burgess is to be believed, both likely involve authority relationships; and both likely involve situations where the victims are physically powerless to resist. Doubtless, molestation is as confusing for a child as for a gynecological patient, and the victims of each must be wracked by self-doubt and fear of repercussions in the event of disclosure. Delayed disclosure is apparently a common feature of both kinds of cases.

Seen in this light, it was every as much an error of law for the trial court to restrict Dr. Loftus from testifying about memory contamination and suggestive interview techniques in the instant case as it was to bar similar evidence in *Speers*. In each case, there was little to suggest that the victims did not believe they were truthful when recounting their experiences to the jury. The problem, in each case, was that there existed the distinct possibility that interviewing techniques caused impressionable and emotionally stressed victims and witnesses to recall matters differently after being

12

interviewed than before interrogation. This is what Dr. Loftus would have explained, and the trial court denied Dr. Finkel due process of law, contrary to the protections of the Fifth and Fourteenth Amendments of the United States Constitution and Article 2, § 4 of the Arizona Constitution when it barred her from telling these things to the jury.

**4. THE TRIAL COURT REVERSIBLY ERRED AND DENIED DR. FINKEL HIS RIGHTS TO CONFRONTATION AND A PUBLIC TRIAL, SECURED HIM BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE 2, § 24 OF THE ARIZONA CONSTITUTION WHEN IT PERMITTED THE WITNESS SHELLY CLUFF TO TESTIFY BY MEANS OF A VIDEO-TAPED DEPOSITION, WITHOUT FIRST ESTABLISHING THAT CLUFF WAS UNAVAILABLE TO TESTIFY.**

The trial court permitted Ms. Cluff to testify in court, for video recordation, outside the presence of the jury without first finding that Cluff was unavailable. R.T. 9/15/03 at 9–10; Ex. 325, 13:30:06 hours. The court required Ms. Cluff to appear in open court to respond to jury inquiries. R.T. 10/7/03 at 59–61).

Appellant can challenge the trial court's ruling in this matter whether he based his objections below on his Sixth Amendment rights. Violations of the Confrontation Clause of the Sixth Amendment are reviewed de novo. *Lilly v. Virginia*, 527 U.S. 116, 136–37, 119 S. Ct. 1887 (1999) (When deciding if hearsay evidence violates the Confrontation Clause, "courts should independently review whether the government's proffered guarantees of trustworthiness satisfy the demands of the Clause."). The Confrontation Clause applies of its own force to out-of-court statements, and is

13

independent of the laws of evidence for the time being. *Crawford v. Washington*, 541 U.S. at 50.

The Sixth Amendment also requires face-to-face confrontation of state's witnesses in open court. *Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798 (1988). It is equally important that the witness face the accused *and the jurors* while testifying. "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding *before the trier of fact.*" *Maryland v. Craig*, 497 U.S. 836, 845, 110 S. Ct. 3157 (1990) (emphasis added).

The trial court's attempt to broker a compromise between the rigid demands of the constitutional right to confrontation and the sensibilities of Ms. Cluff by concocting a hybrid procedure, half in a confidential deposition room, and half in open court before the jury. This solution was just as constitutionally deficient as a complete denial of Dr. Finkel's confrontation and public trial guarantees, and his conviction on Count 48 pertaining to Ms. Cluff cannot stand.

When the court permitted Ms. Cluff to deliver the bulk of her testimony in private, it deprived Dr. Finkel of the safeguard that the pressure of the confrontation requirement is intended to create for witnesses. Had Ms. Cluff been required to deliver

14

her principal accusations with a jury in the box, staring at her, she might not have demonstrated the confidence and self-assurance she displays on videotape.

Ms. Cluff became an experienced witness once she was accorded the extraordinary privilege of testifying in private.   Through the previous videotaped testimony, she became familiar with the general area of inquiry and accustomed to the style of counsel's cross-examination.   Her subsequent appearance for juror questions and limited cross-examination prepared and delivered of those very anxieties that might reveal a chink in her testimonial armor.

Another serious defect in the trial court's solution to Ms. Cluff's problems:  it failed to find that she was *unavailable* to testify in open court.  In *Crawford v. Washington*,  the United States Supreme Court made it clear that out-of-court testimonial statements of witnesses are barred under the confrontation clause, even where the accused had a prior opportunity to cross-examine, where the state has not established that the witness was unavailable. 541 U.S. at 57–59. There was no attempt to show that Ms. Cluff was unavailable, but only that she *preferred* not to appear in person.  Where, as here, the court made no finding that she was unavailable, the demands of the Sixth Amendment remain satisfied.

Dr. Finkel had a right to require Ms. Cluff to accuse him before the jury, in open

15

court, subject to cross-examination, without prior preparation.   This Court should restore those rights to Dr. Finkel and grant him a new trial on Count 48.

**ISSUES 5 AND 6** are not presented for review in this appeal as the court of appeals remanded for resentencing.

**7.   THE TRIAL COURT ERRED IN FAILING TO ISSUE A SENTENCING MINUTE ORDER THAT EXPLAINED THAT IT HAD SENTENCED DR. FINKEL TO CONCURRENT SENTENCES ON COUNTS 10 AND 37/38 IN CR 2002–001431, MAKING HIS TOTAL SENTENCE A STRING OF ELEVEN, AND NOT THIRTEEN, BLOCKS OF CONSECUTIVE SENTENCES.**

There is a conflict between the sentencing minute entry and the transcript of the oral pronouncement of sentence.   If the sequence in the minute order controls, Dr. Finkel must serve 35.75 years; however, if the sequences of the oral pronouncement control, as they must, then Dr. Finkel need serve only 30.25 years.

A.R.S. § 13-708 provides that in the case of multiple sentences imposed at the same time, the terms shall run consecutively, unless the court states otherwise.   If the court does not run the terms consecutively, A.R.S. § 13–708 requires that the court state its reasons for deviating from what case law has determined to be the "default requirement" of consecutive terms.   *State v. Garza*, 192 Ariz. 171, 962 P.2d 898 (1998).

Here, the two longer sequences of sentences must arguably run consecutively, under the terms of A.R.S. § 13-708, because the trial court did not specify when they

16

were to start, and so, it is presumed that one will run after the other. The problem

arises with the sentences imposed on Counts 10 and 37/38 in CR-2002-001431. The

trial court stated that the sentences for those counts were to run consecutively to

Counts 31/32 and 33/34, respectively, even though other counts were also ordered to

run consecutively to Counts 31/32 and 33/34, as well. Because there is nothing in the

law that prevents more than one sentence from starting at the same time as another

sentence, even though each of the two latter sentences is ordered to be served

consecutively to a so-called "mother term," this Court should correct the sentencing

minute order, stating that Count 10 is to run consecutively to Counts 31/32 (and is, *de*

*facto* concurrent with Count 2 in CR-2001-015515) and that Counts 37/38 are to run

consecutively to Counts 33/34, even though Counts 17/18 (in CR-2002-001431) also

start when 33/34 come to an end, and are therefore also *de facto* concurrent with

Counts 37/38.

**8.   THE TRIAL COURT ERRONEOUSLY AGGRAVATED ALL OF DR.
FINKEL'S PRISON SENTENCES, FIRST, BECAUSE IT CITED
AGGRAVATING FACTORS THAT WERE ILLEGAL, OR NOT SUPPORTED
BY THE EVIDENCE, AND SECONDLY BECAUSE IT DID NOT GRANT HIM
A JURY TRIAL ON THE SENTENCING AGGRAVATORS, CONTRARY TO
THE REQUIREMENTS OF THE SIXTH AMENDMENT TO THE UNITED
STATES CONSTITUTION, ARTICLE 2, §§ 23 AND 24 OF THE ARIZONA
CONSTITUTION AND THE HOLDING OF *BLAKELY V. WASHINGTON*.**

The court based the aggravated sentences on five factors, several of which were

17

not proved, are included within other statutory factors, or their use as aggravators is prohibited by law.

The factor of physical harm is redundant to the extent that it repeats the violation of A.R.S. § 13-702(C)(9), already cited by the court in finding that Dr. Finkel had caused the victims emotional harm. This statute makes it clear that harm done to victims is but a single aggravator, and states that the court shall consider both the physical, emotional and financial harm caused to the victim. *See* A.R.S. § 13–702(C)(9). Such double-counting of aggravators is prohibited, except where specifically authorized by statute. *State v. Germain*, 150 Ariz. 287, 290, 723 P.2d 105, 108 (App. 1986). No statute permits a court to count factor (C)(9) twice, and the trial court reversibly erred when it did so.

Nor is there any evidence to support the claim that Dr. Finkel physically harmed any of the victims. No victim testified that she was bruised, cut, abraded or otherwise injured in any way. No witness testified that she experienced anything more than momentary pain. Most of the pain Dr. Finkel's patients described pertained to the Pap smear or pregnancy termination procedures, neither of which constituted a basis for any of the charges against Dr. Finkel. No witness testified that anything that Dr. Finkel did in touching them inappropriately caused the impairment of any physical

18

condition, which is the definition of "physical injury," as that term is defined by A.R.S. § 13–105(29).

Lack of remorse is also an improper aggravating factor. This factor offends the self-incrimination privilege of the Fifth Amendment to the United States Constitution, and trial courts may not use it to justify upward departure from the presumptive term. *State v. Hardwick*, 183 Ariz. 649, 656, 905 P.2d 1384, 1391 (App. 1995).

Finally, the trial court erred when it found that Dr. Finkel had committed his crimes over a period of fifteen years. The repetitive quality of Dr. Finkel's misconduct has already been used to justify sentence enhancement pursuant to A.R.S. § 13-702.02. In *State v. Alvarez*, 205 Ariz. 110, 67 P.3d 706 (App. 2003), Division Two of this Court found that it was an improper exercise in "double-counting" to both enhance with a § 13-702.02 allegation, and then cite to "multiple victims" as an aggravating factor. The state chose to punish the repetitive quality of his conduct by alleging and proving a §13-702.02 allegation. *Alvarez* holds that Dr. Finkel cannot be punished for his repeated misdeeds a second time, by a trial court finding that he abused multiple victims.

Furthermore, Dr. Finkel was entitled to have a jury trial on all the aggravating factors cited in his case, because of the none of the legally correct factors compliant

19

with the requirements of *Blakely v. Washington*.   None of the factors cited is necessarily inherent in the verdict of the guilt phase jury.  All of the others were either unproved, such as physical injury to the victims, or are subjective assessments of the trial court.  These factors are not Blakely-compliant because they were susceptible to being viewed differently by a sentencing jury.  *State v. Burdick*, 209 Ariz. 452, 104 P.3d 183 (2005).

The "time span" factor is not a factor that can be considered in aggravation at all, because it was already used for sentence enhancement pursuant to the provisions of A.R.S. § 13-702.02, and its use is barred by the holding of *Alvarez*.  Accordingly, Dr. Finkel should have had a jury trial on the remaining legally acceptable factors.  His failure to make a request for a jury trial on them was fundamental error, and was not harmless.  *State v. Henderson,* 209 Ariz. 300, 100 P.3d 911 (2004).

## IV. CONCLUSION

For all the reasons set forth above, Dr. Brian Finkel is entitled to a new trial on all count with instructions to the court below to conduct the joinder/severance proceedings in conformity with the requirements of *State v. Aguilar*.  At that new trial, the state should be barred from offering offender profile evidence, and Dr. Finkel should be allowed to offer expert testimony on implanted memory phenomena.  At that new trial, no available witness should be permitted to testify by way of video

20

deposition.   Finally, as to all counts, Dr. Finkel should have a jury trial on the aggravating factors, and the sentencing court should not aggravate his sentences with factors that are not proved or are illegal.

RESPECTFULLY SUBMITTED on this 26Th  day of January, 2007

SUSAN SHERWIN
OFFICE OF THE LEGAL ADVOCATE

By Consuelo M. Ohanesian
Consuelo M. Ohanesian
Deputy Legal Advocate
Attorney for APPELLANT

21

Copy of the foregoing mailed/
delivered this 26 day of
January, 2007, to:

NICHOLAS D. ACEDO
Assistant Attorney General
Criminal Appeals Section
1275 West Washington
Phoenix, AZ 85007

DR. BRIAN L. FINKEL, #182486
Arizona State Prison Complex
Florence – Eyman Complex – SMU #1 Unit
P.O. Box 4000
Florence AZ 85232


By _____

# EXHIBIT A

DIVISION 1
COURT OF APPEALS
STATE OF ARIZONA
FILED

NOV 2 1 2006

PHILIP G. URRY, CLERK
By ꟿℰℒ

Office of the Legal Advocate
Received

IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION ONE

STATE OF ARIZONA,           )    1 CA-CR 04-0046
                            )                              NOV 2 2 2006
            Appellee,       )    DEPARTMENT E
                            )
      v.                    )    MEMORANDUM DECISION
                            )    (Not for Publication -
BRIAN L. FINKEL,            )    Rule 111, Rules of the
                            )    Arizona Supreme Court)
            Appellant.      )
                            )

Appeal from the Superior Court in Maricopa County
Cause Nos. CR 2001-015515 and CR 2002-001431 (consolidated)

The Honorable Jeffrey S. Cates, Judge

CONVICTIONS AFFIRMED;
SENTENCES AFFIRMED IN PART, MODIFIED IN PART AND REMANDED IN PART

Terry Goddard, Attorney General                         Phoenix
      By Randall M. Howe, Chief Counsel, Criminal Appeals Section
      and Nicholas D. Acedo, Assistant Attorney General
Attorneys for Appellee

James J. Haas, Maricopa County Public Defender          Phoenix
      By Edward F. McGee, Deputy Public Defender

Susan Sherwin, Office of the Legal Advocate             Phoenix
      By Consuelo M. Ohanesian, Deputy Legal Advocate
Attorneys for Appellant

E H R L I C H, Judge

¶1      Brian Leslie Finkel appeals from convictions for 22 counts of sexual abuse following a jury trial and from the sentences imposed.   For the reasons explained below, we affirm Finkel's convictions, and we affirm the sentences for all but four of the offenses.   We modify two of those four sentences, and we remand two convictions for re-sentencing.

*FACTS*[1] *AND PROCEDURAL HISTORY*

Finkel was a licensed osteopath specializing in reproductive health care.  In late 1995, a Phoenix Police detective received a complaint about Finkel from one of Finkel's patients who claimed that Finkel had inappropriately touched her clitoris during a pelvic examination.  The detective investigated the matter, but no further action was taken.

¶3      In 2000, the same detective received a second patient's complaint about Finkel.  In March of that year, Phoenix Police Detective Art Haduch was assigned to investigate a third patient's complaint about Finkel as well as the prior two complaints.

¶4      In early 2001, Phoenix Police Detective Mark Stribling investigated nine complaints of alleged sexual misconduct committed by Finkel against Finkel's patients and former patients.  This resulted in the filing of an indictment on October 23, 2001 ("the 2001 indictment").  The 2001 indictment concerned these nine victims, and it charged Finkel with sixteen counts of sexual abuse, a class 5 felony, and one count of sexual assault, a class 2 felony. In it, the grand jury alleged that, without their consent, Finkel inappropriately touched, fondled and/or rubbed the victims' vaginal areas and/or touched, massaged, squeezed or pinched the victims' breasts or nipples either before or after an abortion procedure.

---

[1]    We review the facts in the light most favorable to upholding the verdicts. *State v. Guerra*, 161 Ariz. 289, 293, 778 P.2d 1185, 1189 (1989).

¶5      Finkel was arrested, and there were media reports about the case.  Seemingly as a result of this publicity, Stribling received calls from other patients and former patients of Finkel claiming that they too had been victims of similar conduct.  The resulting investigation of these claims led to the filing of a second indictment on January 25, 2002 ("the 2002 indictment").  This indictment involved 26 victims, and, in it, the grand jury charged Finkel with 43 counts of sexual abuse and seven counts of sexual assault.  Many of the allegations were similar to those in the 2001 indictment, but there were additional allegations that Finkel had inappropriately, and without consent, penetrated the anus of certain victims.

¶6      The two indictments against Finkel involved 35 victims for illegal conduct from 1986 through 2001 as alleged in 67 counts.  As to both indictments, the State filed an allegation of multiple offenses not committed on the same occasion pursuant to Arizona Revised Statutes ("A.R.S.") section 13-702.02 (2001).

¶7      The State filed a motion to consolidate the indictments, and Finkel filed a motion to sever the counts in both indictments.  The trial court denied the State's motion and granted Finkel's motion, whereupon the State filed a motion to reconsider the order denying its motion.  Relying on Arizona Rule of Evidence ("Evidence Rule") 404(c), the State asked the court to review sealed transcripts of the interviews with the victims in both cases.  It also

3

requested an evidentiary hearing to consider testimony from expert witnesses.   Over Finkel's objections to the motion to reconsider and the request for an evidentiary hearing, and after reviewing the transcripts of the interviews, the court, without holding an evidentiary hearing, granted the State's motion to reconsider and ordered the two cases consolidated.

¶8      At trial, all but one of the victims testified in person; one victim, S.C.,[2] testified via a videotaped recording.   In addition, five of Finkel's medical assistants testified, each of whom stated that she had observed Finkel improperly touching a patient's clitoris and/or fondling or groping the patient's breasts.

¶9      Dr. Sydney Wechsler, who had worked in abortion clinics and trained physicians to perform abortions, testified as an expert for the State.   He outlined the proper procedure for conducting a pre-abortion examination, stating that, in his opinion, the clitoris need never be touched unless the patient has complained about her clitoris or if the clitoris appears to be abnormal.   He also explained the appropriate method of palpating the breasts to examine them, and he testified that the nipples should never be squeezed or pinched.   He added that a rectal examination is not necessary in a pre-abortion pelvic examination.

¶10      Dr. Ann Burgess, a professor of psychiatric nursing, testified about the response patterns of victims in the context of

—————————————

[2]      The victims' initials are used to protect their privacy.

4

sexual abuse by doctors.

¶11     Finkel denied that he had engaged in any improper touch-
ing or misconduct during the examinations that he had conducted.
In response to the testimony of his medical assistants, Finkel tes-
tified that he had discharged one of his assistants because she had
been disruptive and that another one had resigned after he had con-
fronted her about taking drug samples from his office for personal
use.  He also maintained that the psychological process of trans-
ference commonly occurs in women who have had abortions and that
women often blame "the person that got them pregnant or the person
that helped them with the abortion" for their problems in order to
assuage their guilt.

¶12     Dr. Gordon Davis, a clinical professor of obstetrics and
gynecology at the University of Arizona School of Medicine, testi-
fied on Finkel's behalf.  He opined that the proper procedure for
conducting a breast examination may include squeezing the nipples
to check for a discharge.  He further testified that, when he per-
forms a pelvic examination, he palpates the vaginal walls, which
may involve inserting his fingers in and out of the vagina, and
that he routinely performs rectal examinations on his patients.

¶13     Dr. Thomas Streed, an expert in police procedures and
training, testified about the use of effective interrogation tech-
niques to obtain reliable information.  He indicated that a narra-
tive-interview format is preferable to the question-and-answer for-

mat that was utilized in this case.   He elaborated that the former method is "for purposes of accuracy and validity and reliability ... more beneficial" and that, in using the latter method, the interviewer can unwittingly provide information to one person that he or she has received from another person.

¶14     Dr. Elizabeth Loftus, a professor of psychology and social behavior at the University of California - Irvine, testified about post-event information and how memory can be contaminated and distorted by media coverage, communication with others or suggestive interview techniques.  She stated that this can sometimes lead to the creation of false memories.

¶15     Rosann Johnson, Finkel's former attorney, testified that she had been present when Haduch had interviewed Finkel.   She thought that the detective had distorted Finkel's words and misrepresented his statements.

¶16     The trial court dismissed one count of sexual assault and five counts of sexual abuse.   The jury convicted Finkel of 22 counts of sexual abuse.  It was unable to reach a verdict on four counts, and it acquitted Finkel of the remaining counts.

¶17     At sentencing, the trial court dismissed the four counts on which the jury could not reach verdicts.  On Count 48, it suspended the imposition of sentence and placed Finkel on probation for 99 years upon his release from prison.  The court imposed aggravated sentences from 1.75 to 2.75 years on the remaining counts,

declaring that the sentences on counts involving the same victim be served concurrently and the sentences on counts involving different victims be served consecutively.

*DISCUSSION*

¶18     Finkel presents four issues regarding the conduct of the trial and five issues pertaining to the sentences imposed.  We address them in order.

1.   *Consolidation of Cases/Refusal to Sever Counts*

¶19     In its motion to reconsider, the State argued that, pursuant to Arizona Rule of Criminal Procedure ("Criminal Rule") 13.3 (a)(1), the offenses could be joined because they were "of the same or similar character."  It also claimed that, pursuant to Criminal Rule 13.4(b), Finkel was not entitled to severance of the counts as a matter of right because "evidence of the other offense or offenses would be admissible under applicable rules of evidence if the offenses were tried separately."

¶20     The State alleged that cross-admissibility of evidence of other offenses pursuant to Criminal Rule 13.4(b) was warranted by Evidence Rule 404(b) to prove motive, intent, knowledge, or absence of mistake or accident.  Alternatively, it argued that, pursuant to Evidence Rule 404(c), evidence of other offenses was cross-admissible to show "that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the offense

7

charged."[3]

¶21      In its motion, the State had asked that the trial court review sealed transcripts of interviews of the 35 victims and Finkel's medical assistants to show that the evidence was sufficient to permit "the trier of fact to find that the defendant committed the other act."  Ariz. R. Evid. 404(c)(1)(A).  It also requested an evidentiary hearing to present expert testimony on the issue of sexual propensity.  There, it posited, Dr. Wechsler would testify that Finkel's conduct did not constitute proper medical procedure but was abusive, and Dr. Dennis Doren would testify that sex offenders can exist in the medical profession and that "offending behavior can be disguised amid otherwise normal activity."  The State argued that this evidence "provide[d] a reasonable basis to infer that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the crime charged."  Ariz. R. Evid. 404(c)(1)(B).

¶22      Finkel objected to the trial court's consideration of the witness interviews as well as to the evidentiary hearing.  Following argument, the court granted the motion to reconsider, noting

---

[3]      In initially denying the State's motion to consolidate and granting Finkel's motion to sever, the court had ruled that the facts did not "fit neatly within existing case law dealing with [Evidence Rule] 404(b)" and that consolidation would be unfairly prejudicial under [Evidence] Rule 403.  It also found that, based on only the allegations in the indictment, the State had failed to meet its burden of proof that the alleged acts of sexual misconduct had risen to the level of sexual aberration as required under Rule 404(c).

that an evidentiary hearing to consider expert testimony was not necessary. It found that the information contained in the transcripts of the witness interviews satisfied Evidence Rule 404(c) because it provided sufficient evidence for a "trier of fact to find that [Finkel] committed the other acts" and because it showed that Finkel's acts could be considered "aberrant sexual propensity to commit the crime(s) charged." It ruled that the probative value of the evidence of other acts was not substantially outweighed by the danger of unfair prejudice. *See* Ariz. R. Evid. 404(c)(1)(C).

¶23     Finkel argues that the trial court erred in granting the motion for reconsideration, consolidating the cases and refusing to sever the counts. In particular, he claims that, in accord with *State v. Aguilar*, 209 Ariz. 40, 97 P.3d 865 (2004), the court was required to conduct a joinder hearing at which Finkel's former employees and the victims would testify. He maintains that such a hearing was necessary pursuant to Evidence Rule 404(c)(1)(A) and *Aguilar* to show that there was clear and convincing evidence that he had committed the other acts. He also claims that the court erred by failing to conduct an evidentiary hearing to consider expert testimony to show aberrant sexual propensity pursuant to Evidence Rule 404(c)(1)(B).

¶24     The State responds that Finkel waived the issue of severance absent fundamental error because he failed to renew his motion to sever at the close of its case. *See* Ariz. R. Crim. P. 13.4(c).

9

It also maintains that Finkel waived the issue of an evidentiary hearing to consider expert testimony by not objecting to such a hearing.  Finally, the State argues that the trial court did not err in consolidating the cases and that *Aguilar* does not compel a contrary result.

¶25     The trial court's decision on a motion to sever counts is reviewed for an abuse of its discretion.  *State v. Hummer*, 184 Ariz. 603, 608, 911 P.2d 609, 614 (App. 1995).  The failure to re-new a motion to sever at trial as required by Criminal Rule 13.4(c) serves to waive the severance issue absent fundamental error. *State v. Laird*, 186 Ariz. 203, 206, 920 P.2d 769, 772, *cert. de-nied*, 519 U.S. 1032 (1996).  We find no error and, therefore, no fundamental error.  *State v. Henderson,* 210 Ariz. 561, 568 ¶23, 115 P.3d 601, 608 (2005) (To obtain relief for fundamental error, there first must be error.).

¶26     In *Aguilar,* the supreme court discussed Evidence Rule 404(c), which codified in part a line of Arizona cases addressing the admission of other-act evidence in cases involving a sexual propensity to commit aberrant acts.  209 Ariz. at 43-45 ¶¶11-17, 97 P.3d at 868-70.  The court first considered the types of acts ad-dressed by Evidence Rule 404(c) and held that "the sexual propen-sity exception of Rule 404(c) is not restricted to cases in which the charges involve sodomy, child molestation, or lewd and lascivi-ous conduct.  Instead, the exception applies to the sexual offenses

10

listed in A.R.S. § 13-1420(C), which includes charges involving nonconsensual heterosexual contact between adults." *Id.* at 48-49 ¶28, 97 P.3d at 873-74. Among those offenses are sexual abuse and sexual assault. *Id.* at 46 ¶21, 97 P.3d at 871.

¶27    The court next considered the conditions that must be met pursuant to Evidence Rule 404(c) in order for other-act evidence to be considered in such cases and held that:

> Before admitting other act evidence to show that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the charged sexual offense, a trial judge must make three determinations. First, the trial court must determine that clear and convincing evidence supports a finding that the defendant committed the other act. Second, the court must find that the commission of the other act provides a reasonable basis to infer that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the charged sexual offense. Third, the court must find that the evidentiary value of proof of the other act is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or other factors mentioned in Rule 403. In making the determination under Rule 403, the court must consider the factors listed in Rule 404(c)(1)(C)(i)-(viii). Finally, the rule requires the trial judge to make *specific* findings with respect to each of the prerequisites for admission under the rule.

*Id.* at 49 ¶30, 97 P.3d at 874 (citations omitted) (emphasis original). The court finally considered whether the trial court made the necessary findings under the facts and applicable legal standard. *Id.* at ¶32.

¶28    Aguilar was charged in one indictment with the sexual assaults of several women. Aguilar admitted that he had engaged in sexual contact with the women, but he claimed that each woman had consented. He moved to sever the counts pursuant to Criminal Rule

11

13.4(b).  The trial court denied the motion on the basis that the
counts were properly joined pursuant to Criminal Rule 13.3(a)(1)
and that evidence as to each victim was cross-admissible pursuant
to Evidence Rule 404(c).

¶29      The supreme court observed that, in determining whether
there was clear and convincing evidence that each of the acts had
occurred, the trial court had relied solely on grand jury testimony
consisting of "a police officer's descriptions of the victims'
statements."  *Id.* at 49-50 ¶33, 97 P.3d at 874-75.  The court found
that this evidence was insufficient pursuant to Evidence Rule
404(c)(1)(A) to determine whether clear and convincing evidence es-
tablished that Aguilar had committed the other acts.  *Id.* at 50
¶¶34-35, 97 P.3d at 875.  It further noted that, because the issue
of consent to the sexual contact "turn[ed] largely on the credibil-
ity of the witnesses[,]" the trial court was unable to resolve the
issue without hearing testimony from the victims or considering
their prior testimony.  *Id.* at ¶35.

¶30      *Aguilar* is distinguishable from Finkel's case.  In *Agui-*
*lar*, the only evidence that the trial court had considered was the
"third party's recitation of the victims' claims" before the grand
jury.  *Id.* at ¶37.  In contrast, the court in this case considered
the victims' own statements and first-person accounts of what they
had perceived or observed.  We reject Finkel's argument that a
hearing was required to further evaluate their credibility.

12

¶31     We also conclude that the trial court did not err in finding without the assistance of expert testimony that, pursuant to Evidence Rule 404(c)(1)(B), "[t]he commission of the other act provides a reasonable basis to infer that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the crime charged." As the comment to Evidence Rule 404(c) states, a court may admit other-act evidence, even if dissimilar or remote, "by way of expert testimony or otherwise, to support relevancy" but that the requirement of "expert testimony in all cases of remote or dissimilar acts is hereby eliminated."

¶32     The State's offer of proof regarding the expert testimony and the witness interviews provided the trial court with a reasonable basis upon which to conclude that Finkel had a character trait giving rise to an aberrant sexual propensity to commit the offenses charged. The court made the requisite findings that the requirements of Evidence Rule 404(c) had been met, and it thus did not err in denying the motion to sever and consolidating the cases pursuant to Criminal Rules 13.3(a)(1) and 13.4(b).[4]

   2.   *Dr. Burgess' Testimony*

¶33     Before trial, Finkel filed a motion *in limine* to preclude the expert testimony of Dr. Burgess and another expert on the basis

---

[4]     We reject Finkel's contention that the failure to hold a joinder hearing violated the Confrontation Clause. The right of confrontation and cross-examination is a trial right, not a right involving pretrial issues. *Pennsylvania v. Ritchie*, 480 U.S. 39, 52 (1987).

13

that their opinions would constitute inadmissible sex-offender pro-
file evidence.  The State responded that the witnesses would tes-
tify about the common reactions of victims of sexual abuse and the
general characteristics of sex offenders but that they would not
express an opinion about the veracity of a particular victim.  At
argument, the State explained that Dr. Burgess was a "blind ex-
pert," had no personal knowledge of the facts of the case and would
only testify in general about the responses of victims to sexual
abuse in a physician-patient setting.  The trial court granted the
motion as to one expert but denied it as to Dr. Burgess.

¶34      At trial, Dr. Burgess testified about the common re-
sponses of patients who had experienced "unwanted sexual contact"
during a medical examination.  She did not testify about the char-
acteristics of a sexual offender, and she stated that she had no
knowledge about the particular facts of the case.

¶35      Finkel claims that the trial court abused its discretion
in allowing Dr. Burgess' testimony because it constituted inadmis-
sible rape-trauma-syndrome" evidence, citing *State v. Huey*, 145
Ariz. 59, 62-63, 699 P.2d 1290, 1293-94 (1985) (testimony of a type
of post-traumatic stress disorder that describes the stages of rape
trauma, the victim's mental state and a conclusion that the victim
had been raped).  In the alternative, he claims that her testimony
constituted offender-profile evidence, citing *State v. Lee*, 191
Ariz. 542, 545 ¶12, 959 P.2d 799, 802 (1998) (testimony of charac-

14

teristics of persons engaged in a particular type of crime).

¶36     Generally, it is a decision within the discretion of the trial court whether expert testimony will aid the jury in understanding an issue outside their common experience under Evidence Rule 702. *State v. Moran*, 151 Ariz. 378, 381, 728 P.2d 248, 251 (1986). *Id*. Similarly, it is within the discretion of the court to weigh the probative value of the testimony against the danger of unfair prejudice under Evidence Rule 403.

¶37     Dr. Burgess' testimony did not constitute rape-trauma-syndrome evidence or offender profile evidence. Rather, she testified about the characteristic responses of sexual-abuse victims to explain behavior that might otherwise seem inconsistent or questionable to a juror. Such expert testimony of a generalized nature has been held admissible to aid the jury in understanding the issues. *Id*. at 384, 728 P.2d at 254. As stated in *State v. Tucker*, 165 Ariz. 340, 346, 798 P.2d 1349, 1355 (App. 1990),

> [A]n expert witness may testify about the general characteristics and behavior of sex offenders and victims if the information imparted is not likely to be within the knowledge of most lay persons. The expert may neither quantify nor express an opinion about the veracity of a particular witness or type of witness. The expert may not explain that, based upon the characteristics and behavior he has described, a person's conduct is consistent or inconsistent with the crime having occurred.

¶38     Dr. Burgess' testimony fell within the parameters of *Moran* and *Tucker*. She provided information to the jurors that was outside the realm of their ordinary knowledge and experience. She

neither testified about the veracity of individual victims nor gave an opinion as to the likelihood that a crime occurred based upon the general characteristics.  We find no error.

 3.   *Dr. Loftus' Testimony*

¶39      Before trial, the State filed a motion *in limine* to limit Dr. Loftus' testimony to general characteristics of memory contamination and suggestion and to limit her testimony concerning the facts of the case in accordance with *Moran* and *Tucker*.  The court granted the motion and ruled that Dr. Loftus could not answer questions based on the specific facts of the case.

¶40      After Dr. Loftus testified, Finkel made an offer of proof as to the precluded testimony.  He indicated that she would have testified that she had reviewed the transcripts of the interviews taken by Haduch and Stribling and that, as to particular witnesses, the detectives had supplied information and made suggestive comments to them.  Finkel further indicated that Dr. Loftus would have opined that the interview process had been biased and that there was a risk that the witnesses' memories had thus been altered or contaminated.

¶41      Finkel claims that the trial court abused its discretion in granting the motion *in limine* and restricting Dr. Loftus' testimony.  He relies on *State v. Speers*, 209 Ariz. 125, 129 ¶14, 98 P.2d 560, 564 (App. 2004) ("The admissibility of expert testimony in cases involving sex crimes is subject to the same rules of evidence

16

applicable to all expert testimony.").

¶42      Speers was charged with child molestation and sexual abuse.  The trial court precluded him from introducing expert testimony "with respect to suggestive interview techniques and its influence on children's memories."  This court concluded that the trial court had erred in refusing to allow this evidence "for the jury's consideration in evaluating the children's testimony."  *Id.* at 132 ¶25, 98 P.3d at 567.  We specifically held that "an expert witness for the defense cannot give an opinion that the victim made false allegations of molestation; because such testimony directly addresses the credibility of the victim.  However, the fact that limited expert testimony regarding proper interview techniques indirectly involves the child's credibility does not render it inadmissible."  *Id.* at 131 ¶23, 93 P.3d at 566 (citation omitted).

¶43      In this case, the trial court correctly allowed limited, general testimony concerning the risks of suggestive interview techniques to explain the possibility that the victims may have had false memories.  However, because such an expert cannot give an opinion as to the veracity or reliability of a witness' testimony, the court did not err in prohibiting Dr. Loftus from testifying about the possibility of implanted memories of particular victims.

   4.   *Admission of Videotaped Testimony*

¶44      S.C. filed a motion to quash her trial subpoena on the basis that her mental and emotional condition made it extremely

17

difficult for her to testify.  Pursuant to Evidence Rule 611, the trial court denied the motion to quash but ordered that S.C. appear at a videotaped deposition.  Finkel unsuccessfully objected to such a procedure, claiming that it violated his right to confront witnesses, but, after the deposition, the following colloquy occurred:

> THE COURT:  What about, you want to put something on the record --
>
> [Finkel's counsel] MR. GIERLOFF:  Right; with [S.C.].
>
> I'm not sure how much was captured on videotape. She was permitted to both receive and make a personal telephone call, allowed to receive it while on the witness stand on her cell phone, and then was allowed apparently to return it, and she was excused from the courtroom for a certain period of time, right in the middle of her testimony.
>
> And I wanted to make sure the record reflected that she was afforded that treatment, and I guess the video would speak for itself.  But I would like to also put on the record, that she did not appear the least bit fragile while she was testifying.
>
> And that, well, that the whole treatment which she was afforded seemed to be unjustified by the facts, and I believe it impinges upon Doctor Finkel's right of confrontation.
>
> THE COURT:  Do you want to say anything?
>
> [Prosecutor] MR. GADOW:  No.
>
> THE COURT:  Okay.  My ruling, I gave after she appeared in my office.  And there was quite a contrast to her demeanor when she was on the stand.  I feel it was justified at the time.
>
> It may be that the difference in demeanor was a result of her not being here in front of a jury.  It may have been a different situation.  I guess, you may want to think whether you want her to testify live under the circumstances.

18

MR. GIERLOFF:  I've been thinking about it.

THE COURT:  Would you like her to testify live?  There are two issues; bring her back here live to respond to questions the jurors may have.

MR. GIERLOFF:  I think at a minimum I would ask that.

THE COURT:  And I've got no problem with that.  And do you want to start over again?

MR. GIERLOFF:  I don't know.  I'm unprepared to make [a] decision.

THE COURT:  Why don't you think about it.  My inclination is, I don't see any problem forcing her to come back and respond to questions spontaneously but --

MR. GADOW:  Your Honor, you know, my concern would be that now she thinks this is over in terms of her testimony.

THE COURT:  I told her she may well be back to answer questions.

MR. GADOW:  Answer questions is one thing, but I do think when I met with her, her demeanor would have been much different had she been testifying in front of the jury, because I think she would be a lot more emotional and more -- her demeanor would be more closer to how she was in the judge's chambers rather than how she was on Friday.

THE COURT:  I kept -- with the exception of the first minute or so when we had counsel questioning, I locked the camera on her so the camera was locked on her. You're going to see in there that she appeared to be quite relaxed.

MR. GIERLOFF:  Yes.

THE COURT:  When, I think it was -- somebody was conferring, she was looking at her friend who was in the back of the courtroom.

MR. GIERLOFF:  Uh-huh.

THE COURT:  And she is kind of smiling at her, almost a silent communication.  You ought to think about it.  You

19

may not want her to appear any differently than she ap-
peared on the video.

MR. GIERLOFF: Right.

THE COURT: Okay. Anyhow, we'll take that up. Now we'll
take that up later.

¶45     The following day, although S.C. was available, Finkel
did not request that she testify in person. Instead, the trial
court played the videotape for the jury, allowed the jurors to ask
questions in person and permitted counsel to ask follow-up ques-
tions. Finkel claims that this use of the videotaped deposition
violated his federal and state constitutional rights to cross-
examine witnesses.

¶46     The record clearly reflects that the trial court offered
to reconsider its ruling allowing the videotaped deposition of S.C.
in favor of requiring her to testify in person before the jury.
Although Finkel did not make an affirmative decision regarding the
court's offer, he did not further object to the presentation of the
videotape at trial. He has thus waived the issue absent fundamen-
tal error. *Henderson*, 210 Ariz. at 567 ¶19, 115 P.3d at 607.

¶47     To establish fundamental error, Finkel must show that any
alleged error was fundamental and caused him prejudice. *Id.* at ¶20
(defining prejudice as an error of such magnitude that a defendant
could not receive a fair trial). Finkel has established neither
fundamental error nor prejudice. Nothing in the record suggests
that the use of S.C.'s videotaped deposition followed by jury and

20

counsel's questions denied Finkel the right to a fair trial.

    5.    *Imposition of Probation on Count 48*

¶48       For Count 48 of the 2002 Indictment, the trial court sus-
pended the imposition of sentence in favor of a term of probation
of 99 years, citing A.R.S. § 13-902(E)(Supp. 2002).   However, the
acts alleged in Count 48 occurred in 1986, and § 13-902(E) did not
become effective until January 1, 1994.   Finkel argues and the
State agrees that this sentence is illegal.

¶49       A defendant must be sentenced under the laws in effect
when the crime was committed, and subsequent changes in sentencing
statutes are not applied retroactively.   A.R.S. § 1-246 (2001);
*State v. Stine,* 184 Ariz. 1, 2-3, 906 P.2d 58, 59-60 (App. 1995).
Therefore, as to this count, we must remand the matter to the trial
court to resentence Finkel in accord with the sentencing statutes
in effect when the offense was committed.[5]

    6.    *Sentences on Counts 10, 31 and 32*

¶50       In the sentencing minute entry, the trial court imposed
an aggravated sentence of 2.75 years each on Counts 10, 31 and 32
of the 2002 Indictment.   However, at the sentencing, the court im-
posed an aggravated sentence of 1.75 years on Counts 31 and 32.
"[W]hen there is a discrepancy between the oral pronouncement of
sentence and the minute entry that cannot be resolved by reference

_____

[5]   We reject the State's suggestion that, due to the sentencing
error on this count, we should remand the sentences on the other
counts in order to allow the court to reconsider the sentences as a
whole.   There is no authority for this.

to the record, a remand for clarification of sentence is appropriate." *State v. Bowles*, 173 Ariz. 214, 216, 841 P.2d 209, 211 (App. 1992) (emphasis omitted).   Both parties agree that the 2.75-year sentences on Counts 10, 31 and 32 are illegal because the court enhanced those counts pursuant to A.R.S. § 13-702.02 and the maximum allowable sentence for each count under the applicable sentencing provisions is 2.5 years.   We therefore modify the sentences on Counts 31 and 32 to 1.75 years each, and remand Count 10 for resentencing.   *See* A.R.S. § 13-4037 (2001).

      7.   *Concurrent versus Consecutive Sentences*

¶51   Finkel argues that, because the trial court did not specify whether the sentences for Count 2 in the 2001 Indictment, for Count 10 in the 2002 Indictment, for Counts 17 and 18 in the 2002 Indictment, and for Counts 37 and 38 in the 2002 Indictment are to run concurrently with or consecutively to each other, the sentences for those six offenses should be concurrent and this court should correct the record accordingly.   The State responds that the court intended that the sentences on these six counts be consecutive, and that, if its intent is not clear, then, pursuant to A.R.S. § 13-708 (2001), the sentences are to be consecutive.

¶52   Our review of the record shows that the trial court intended that the sentences for crimes involving the same victim be served concurrently and that the sentences for offenses involving different victims be served consecutively.   Therefore, the sentence

22

for Count 2 in the 2001 Indictment, the sentence for Count 10 in the 2002 Indictment, the concurrent sentences for Counts 17 and 18 in the 2002 Indictment, and the concurrent sentences for Counts 37 and 38 in the 2002 Indictment are to be served consecutively.

   8.   *Improper Aggravating Factors*

¶53      The trial court found as aggravating factors that Finkel had "caused emotional harm to his victims, including depression, humiliation and fear, ha[d] caused physical harm to some of them," that he violated his position of trust as a doctor, that his lack of remorse and failure to accept responsibility did "not bode well for rehabilitation" and that he had committed the acts over an extended period of time.   Finkel contends that the court's use of three of these aggravating factors was improper.

¶54      First, Finkel claims that the trial court's consideration of physical harm to the victims as a factor separate from emotional harm was improper because both emotional and physical harm are included within A.R.S. § 13-702(C)(9)(2001) and also because there is no evidence that he caused physical harm to any victims.   Second, he contends that, because he denied guilt, his lack of remorse cannot be used as an aggravating factor because this violates his constitutional privilege against self-incrimination.   *See State v. Hardwick*, 183 Ariz. 649, 656, 905 P.2d 1384, 1393 (App. 1995).   Finally, he maintains that aggravating his sentences because he committed the acts over a long period of time was improper because the

repetitive nature of the offense was already enhanced by A.R.S. §
13-702.02 and such "double counting" is prohibited by *State v. Al-
varez*, 205 Ariz. 110, 114 ¶¶11-13, 67 P.3d 706, 710 (App. 2003)
(When court enhanced sentences pursuant to A.R.S. § 13-702.02, it
was improper to aggravate the sentences because there were six vic-
tims in separate incidents and the same factor was essentially ap-
plied twice.).  The State responds that Finkel failed to object to
the aggravating factors, that he waived any objection to them ab-
sent fundamental error and that there was no error.

¶55      First, as to the physical harm to some of the victims,
the trial court considered the emotional and physical harm to the
victims as one aggravating factor, not two separate factors.  Fur-
ther, there is sufficient evidence that, as to some of the victims,
Finkel caused physical as well as emotional harm as a result of his
sexual abuse.

¶56      Second, because Finkel chose to speak at the sentencing
proceedings, the privilege against self-incrimination does not pro-
hibit the trial court from considering his own statements at sen-
tencing as a basis for finding that he lacked remorse.  *See e.g.*,
*State v. Henderson*, 209 Ariz. 300, 312 ¶43, 100 P.3d 911, 923 (App.
2004) ("This is not a circumstance in which a defendant has re-
mained silent.  Thus, we need not consider whether the Fifth Amend-
ment's right to silence precludes the use of lack of remorse as an
aggravator. … This is a case where the trial judge affirmatively

24

considered the defendant's own statements made to her at sentencing as a basis for finding a lack of remorse."), *aff'd in part, vac. in part on other grounds*, 210 Ariz. 561, 115 P.3d 601 (2005); *see also State v. Greene*, 192 Ariz. 431, 441 ¶40, 967 P.2d 106, 116 (1998) ("We agree that the statements [of the defendant] constitute bragging and show a tremendous lack of remorse.").

¶57     Finkel stated that he felt remorse for the victims because he did not understand their feelings and needs and because they had been traumatized by the trial.  The trial court was not persuaded by his statements.  It believed that Finkel thought that the prosecution had been politically motivated because he had performed abortions, that Finkel thought that it was he who had been victimized and that he was not remorseful.  We will defer to the court in the better position to assess whether a defendant is truly remorseful.  *See State v. Calderon*, 171 Ariz. 12, 13-14, 827 P.2d 473, 474-75 (App. 1991).

¶58     Finally, we find no error in aggravating the sentences because the offenses occurred over an extended period of time.  The trial court did not "double-count" by enhancing the sentences pursuant to A.R.S. § 13-702.02 and aggravating them on the basis of multiple victims as was the case in *Alvarez*.  It imposed aggravated sentences because the offenses were not isolated instances of sexual abuse but, rather, part of a prolonged and extensive pattern of sexual misconduct.  This reflected Finkel's criminal character and

25

history, both of which were proper aggravating factors. *State v. Shuler*, 162 Ariz. 19, 21, 780 P.2d 1067, 1069 (App. 1989).

     9.   *Violation of* Blakely v. Washington

¶59    Finkel claims that he was entitled to a jury trial on the aggravating factors pursuant to *Blakely v. Washington*, 542 U.S. 296 (2004). We disagree.

¶60    The trial court's finding that Finkel committed the offenses over an extended period of time is inherent in the verdicts because the jury's findings included the dates when the offenses occurred. Under *State v. Martinez*, 210 Ariz. 578, 585-86 ¶¶26-27, 115 P.3d 618, 625-26, *cert. denied*, 126 S.Ct. 762 (2005), if the trial court finds the existence of one aggravating factor that is *Blakely* compliant, it is permitted to find other aggravating factors.

*CONCLUSION*

¶61    For the foregoing reasons, we affirm Finkel's convictions. We also affirm the sentences on all but four counts, those being Counts 10, 31, 32 and 48. On Counts 31 and 32, we modify the sentences. On Counts 10 and 48, we remand for resentencing.

                                  _____
                                  SUSAN A. EHRLICH, Judge

CONCURRING:

_____
JON W. THOMPSON, Presiding Judge

_____
G. MURRAY SNOW, Judge

# EXHIBIT  F

6 boxes

0 4-0096
acedo



# Supreme Court

**STATE OF ARIZONA**

402 ARIZONA STATE COURTS BUILDING
1501 WEST WASHINGTON STREET
PHOENIX, ARIZONA 85007-3231

TELEPHONE: (602) 452-3396

RACHELLE M. RESNICK
CLERK OF THE COURT

KATHLEEN E. KEMPLEY
CHIEF DEPUTY CLERK

September 26, 2007


**RE:   STATE OF ARIZONA v BRIAN L FINKEL**
      Arizona Supreme Court   No. CR-07-0036-PR
      Court of Appeals Division One   No. 1 CA-CR 04-0046
      Maricopa County Superior Court   Nos. CR 2001-015515 and
           CR 2002-001431


GREETINGS:

The following action was taken by the Supreme Court of the State of
Arizona on September 25, 2007, in regard to the above-referenced
cause:


**ORDERED: Petition for Review by Arizona Supreme Court = DENIED.**

Record returned to the Court of Appeals, Division One, Phoenix, this
26th day of September, 2007.


Rachelle M Resnick, Clerk

TO:
Nicholas D Acedo, Assistant Attorney General, Arizona Attorney
     General's Office
Edward F McGee, Maricopa County Public Defender's Office, Main
     Office
Consuelo M Ohanesian, Deputy Legal Advocate, Maricopa County Office
     of the Legal Advocate
Brian L Finkel, ADOC #182486, Arizona State Prison, Florence -
     Administrative Offices
West Publishing Company
Lexis Nexis
Philip G Urry, Clerk, Court of Appeals, Division One, Phoenix
kg

# EXHIBIT  G

Michael K. Jeanes, Clerk of Court
*** Filed ***
03/06/2008 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CR 2001-015515                                           02/29/2008


HONORABLE L. GRANT                        CLERK OF THE COURT
                                                   S.M. Perez
                                                     Deputy


STATE OF ARIZONA                              CINDI S NANNETTI

v.

BRIAN L FINKEL                                MICHAEL J DEW
DOB: 12/10/1949

                                              APO-SENTENCINGS-CCC
                                              APPEALS-CCC
                                              AZ DEPT OF CORRECTIONS-PHOENIX
                                              DISPOSITION CLERK-CSC
                                              RFR
                                              VICTIM SERVICES DIV-CA-CCC


RE - SENTENCE - IMPRISONMENT AND PROBATION

11:23 a.m.

State's Attorney:          Cindi Nannetti
Defendant's Attorney:      Michael Dew
Defendant:                 Present
Court Reporter:            Lydia Estrada-Gray

This is the time set for Re-Sentencing on Counts 10 and 48.

Count(s) 10 and 48: The Defendant was found guilty after a trial by jury.

IT IS THE JUDGMENT of the Court Defendant is guilty of the following:

OFFENSE: Count 10: Sexual Abuse
Class 5 Felony

Docket Code 189                Form R189-04                        Page 1

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CR 2001-015515                                      02/29/2008

     A.R.S. § 13-1404, 13-1401, 13-3821, 13-701, 13-702, 13-702.01, 13-702.02, 13-801, 31-281

Date of Offense: 11/18/1995
Non Dangerous - Non Repetitive

OFFENSE: Count 48: Sexual Assault
Class 5 Felony
A.R.S. § 13-1404, 13-1401, 13-3821, 13-701, 13-702, 13-801
Date of Offense: On or between 06/01/1986 and 12/31/1986
Non Dangerous - Non Repetitive

     AS PUNISHMENT, IT IS ORDERED Defendant is sentenced to a term of imprisonment and is committed to the Arizona Department of Corrections as follows:

Count 10:  1.75 year(s) from completion of remaining counts
Presentence Incarceration Credit:
Presumptive
This sentence is to be consecutive to remaining counts currently serving in the Arizona Department of Corrections.

     IT IS ORDERED suspending imposition of sentence and, under the supervision of the Adult Probation Department (APD), placing the defendant on probation for:

Count 48 Probation Term: 3 Years

    Upon absolute discharge from prison for a separate offense in Count 10.

    Conditions of probation include the following:

     Count(s) 10:  IT IS ORDERED authorizing the Maricopa County Sheriff to deliver Defendant to the Arizona Department of Corrections.

     IT IS ORDERED the Clerk of the Superior Court remit to the Arizona Department of Corrections a copy of this Order or the Order of Confinement together with all presentence reports, probation violation reports, and medical and psychological reports that are not sealed in this cause relating to the Defendant.

     Count(s) 48: IT IS FURTHER ORDERED Defendant be released from custody for this count only.

Docket Code 189                    Form R189-04                    Page 2

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CR 2001-015515                                          02/29/2008

Defendant has waived the preparation of a presentence report.

Pursuant to the Defense's Order for Return of Defendant to the Arizona Department of Corrections,

IT IS ORDERED that the Maricopa County Sheriff's Office return Brian L. Finkel, #P387302, ADC #182486, DOB 12/10/1949, to the custody of the Arizona Department of Corrections.

FILED: Signed Order

11:30 a.m. Matter concludes.

ISSUED: Order of Confinement - Certified Copy to DOC via MCSO

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CR 2001-015515

02/29/2008

Defendant's thumbprint is permanently affixed to this sentencing order in open court.

/s/  HONORABLE L. GRANT
JUDGE OF THE SUPERIOR COURT

(thumbprint)