1

2

3

4

5

6             IN THE UNITED STATES DISTRICT COURT

7             FOR THE DISTRICT OF ARIZONA

8

9   Brian Leslie Finkel,                )    No. CV-10-536-PHX-FJM (LOA)
                                         )
10            Petitioner,                )    **REPORT AND RECOMMENDATION**
                                         )
11  vs.                                  )
                                         )
12  Sandra Walker, et al.                )
                                         )
13            Respondents.               )
                                         )
14  _____ )

15          This matter is before the Court on Petitioner's Petition for Writ of Habeas Corpus.

16  (Docs. 1, 5)  Respondents have filed an Answer, doc. 13, to which Petitioner has replied,

17  doc. 14.   For the reasons set forth below, the Petition should be denied.

18  **I. Factual and Procedural Background**

19          **A.  Charges, Trial and Sentencing**

20          On October 23, 2001, the State of Arizona filed an indictment in the Arizona Superior

21  Court, Maricopa County, case number CR 2001-015515, charging Petitioner with 16 counts

22  of sexual abuse, class 5 felonies (Counts 1-6, 8-17); and one count of sexual assault, a class

23  2 felony (Count 7).  (Respondents' Exh. A, Item 68)  On January 25, 2002, the State filed an

24  indictment in CR 2002-001431 charging Petitioner with 43 counts of sexual abuse, class 5

25  felonies (Counts 1-6, 8-12, 14, 16-26, 29-39, 41, 42, 44-50); and seven counts of sexual

26  assault, class 2 felonies (Counts 7, 13, 15, 27-28, 40, 43) (Respondents' Exh. A, Item 1)

27

28

1    After initially denying the State's motion, on October 10, 2002, the trial court[1] granted the

2    State's motion to reconsider and consolidate the charges in the two indictments.

3    (Respondents' Exh. A, Item 66)

4         All of the charges arose from an investigation into allegations that Petitioner, an

5    osteopathic physician certified in obstetrics and gynecology (OB/GYN), was sexually

6    molesting his patients during examinations.  (Respondents' Exh. D)  The charged offenses

7    involved 35 of Petitioner's patients and spanned 18 years.  (Respondents' Exh. D)  The State

8    alleged that the charges, as related to each victim, were multiple offenses not committed on

9    the same occasion, but consolidated for trial, pursuant to A.R.S. § 13-702.02.  (Respondents'

10   Exh. A, Item 27, Item 89)

11        Petitioner's case proceeded to trial before the Honorable Jeffrey S. Cates.  The trial

12   court dismissed one count of sexual assault and five counts of sexual abuse.  (Respondents'

13   Exh. D at 6)  On December 1, 2003, the jury found Petitioner guilty of 22 of the 60 counts

14   submitted to the jury.  (Respondents' Exh. A, Item 754)   The jury was unable to reach a

15   verdict on four counts, and acquitted Petitioner on the remaining counts.  (Respondents'

16   Exh. D at 6)   During the January 2, 2004 sentencing proceeding, the court dismissed the

17   four counts on which the jury could not reach verdicts.  (Respondents' Exh. D at 6)  On

18   Count 48, the court suspended imposition of sentence and placed Petitioner on probation for

19   99 years upon his release from prison.  (Respondents' Exh. A, Item 783)  The court imposed

20   aggravated sentences from 1.75 to 2.75 years on the remaining counts, ordering that the

21   sentences on counts involving the same victim run concurrently and the sentences on counts

22   involving different victims run consecutively.  (*Id.*)

23        **B.  Direct Appeal**

24        Petitioner filed a timely notice of appeal.   On April 4, 2005, Petitioner, through

25   counsel, filed an opening brief raising eight ground for relief.  (Respondents' Exh. B)   On

26   November 21, 2006, the Arizona Court of Appeals affirmed Petitioner's convictions and

27   _____

28        [1]  The Honorable Jeffery S. Cates.

1  affirmed his sentences for all but four of the convictions.  (Respondents' Exh. D)   The

2  appellate court modified two of those four sentences, and remanded two convictions for re-

3  sentencing.  (Respondents' Exh. D)   Petitioner sought review in the Arizona Supreme Court

4  which was summarily denied on September 26, 2007.  (Respondents' Exhs. E, R)   On

5  February 29, 2008, Petitioner was re-sentenced on counts 10 and 48.[2]  (Respondents' Exh.

6  G)

7  **C. Post-Conviction Relief**

8  In December of 2007, Petitioner filed two notices of post-conviction relief.

9  (Respondents' Exhs. H, I)   On December 3, 2008, appointed counsel filed a notice of

10  completion of review advising the court that he was unable to find any colorable claims to

11  raise.  (Respondents' Exh. J)  The trial court granted Petitioner an extension until January

12  20, 2009 to file a *pro se* petition.  (Respondents' Exh. K)  On March 10, 2009, the court

13  dismissed the post-conviction proceedings based on Petitioner's failure to file a petition for

14  post-conviction relief.  (Respondents' Exhs. K, L)

15  **D. Petition for Writ of Habeas Corpus**

16  Thereafter, Petitioner, through counsel, filed a timely petition for writ of habeas

17  corpus and supporting memorandum in this Court.  (Docs. 1, 5)  Petitioner raises four

18  claims: (1) Petitioner was denied his Fourteenth Amendment right to equal protection, his

19  Fifth and Sixth Amendment rights to a fair trial, and his Sixth Amendment right to

20  confrontation by the trial court's refusal to sever counts and joinder of the indictments for

21  trial; (2) the testimony of Dr. Ann Burgess usurped the function of the jury, lowered the

22  prosecution's burden of proof, and deprived Petitioner of his Fourteenth Amendment right to

23  equal protection and his Sixth Amendment right to a fair trial; (3) Petitioner was denied his

24  Fifth, Sixth, and Fourteenth Amendment rights to due process and to present a defense when

25  the court refused to permit defense expert Elizabeth Loftus to testify regarding the risk of

26  implanted memories; and (4)  Petitioner was denied his Sixth Amendment right to

27  _____

28  [2]  The Honorable Larry Grant presided.

1  confrontation when the court permitted one of his accusers to testify by way of videotape

2  without any showing that she was legally unavailable.  (Docs. 1, 5)

3       Respondents assert that the Petition should be denied because Petitioner's claims

4  either lack merit or are procedurally barred.  (Doc. 13)   Petitioner opposes that assertion.

5  (Doc. 14)   The Court will address the relevant legal principles and then consider Petitioner's

6  claims in light thereof.

7  **II.  Exhaustion and Procedural Bar**

8       A federal court may not grant a petition for writ of habeas corpus unless the petitioner

9  has exhausted the state remedies available to him.  28 U.S.C. § 2254(b).  A habeas petitioner

10  bears the burden of showing that he has properly exhausted each claim.  *Cartwright v. Cupp*,

11  650 F.2d 1103, 1104 (9th Cir. 1981) (*per curiam*). The exhaustion inquiry focuses on the

12  availability of state remedies at the time the petition for writ of habeas corpus is filed in

13  federal court.  *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999).  The prisoner "shall not be

14  deemed to have exhausted . . . if he has the right under the law of the State to raise, by any

15  available procedure, the question presented."  28 U.S.C. § 2254(c).  In other words, proper

16  exhaustion requires the prisoner to "give the state courts one full opportunity to resolve any

17  constitutional issues by invoking one complete round of the State's established appellate

18  review process."  *O'Sullivan*, 526 U.S. 845. "One complete round" includes filing a

19  "petition[] for discretionary review when that review is part of the ordinary appellate review

20  procedure in the State."  *Id.*   State prisoners may skip a procedure occasionally employed by

21  a state's courts to provide relief only if a state law or rule precludes use of the procedure, or

22  the "State has identified the procedure as outside the standard review process and has plainly

23  said that it need not be sought for purposes of exhaustion. *Id.* at 848, 850.

24       To exhaust state remedies, a petitioner must afford the state courts the opportunity to

25  rule upon the merits of his federal claims by "fairly presenting" them to the state's "highest"

26  court in a procedurally appropriate manner.  *Castille v. Peoples*, 489 U.S. 346, 349 (1989);

27  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (stating that "[t]o provide the State with the

28  necessary 'opportunity,' the prisoner must "fairly present" her claim in each appropriate

1  state court . . . thereby alerting the court to the federal nature of the claim.").  In Arizona,

2  unless a prisoner has been sentenced to death, the "highest court" requirement is satisfied if

3  the petitioner has presented his federal claim to the Arizona Court of Appeals either on

4  direct appeal or in a petition for post-conviction relief.  *Crowell v. Knowles*, 483 F.Supp.2d

5  925 (D.Ariz. 2007) (discussing *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

6       In addition to presenting his claims to the proper court, a state prisoner must fairly

7  present his claims to that court to satisfy the exhaustion requirement.  A claim is "fairly

8  presented" in state court only if a petitioner has described both the operative facts and the

9  federal legal theory on which his claim is based.  *Reese*, 541 U.S. at 28.  It is not enough that

10  all of the facts necessary to support the federal claim were before the state court or that a

11  "somewhat similar" state law claim was raised.  *Reese*, 541 U.S. at 28 (stating that a

12  reference to ineffective assistance of counsel does not alert the court to federal nature of the

13  claim).  Rather, the habeas petitioner must cite in state court to the specific constitutional

14  guarantee upon which he bases his claim in federal court.  *Tamalini v. Stewart*, 249 F.3d

15  895, 898 (9th Cir. 2001).  Similarly, general appeals to broad constitutional principles, such

16  as due process, equal protection, and the right to a fair trial, are insufficient to establish fair

17  presentation of a federal constitutional claim.  *Lyons v. Crawford*, 232 F.3d 666, 669 (9th

18  Cir. 2000), *amended on other grounds*, 247 F.3d 904 (9th Cir. 2001); *Shumway v. Payne*,

19  223 F.3d 982, 987 (9th Cir. 2000) (insufficient for prisoner to have made "a general appeal

20  to a constitutional guarantee," such as a naked reference to "due process," or to a

21  "constitutional error" or a "fair trial").  Likewise, a mere reference to the "Constitution of

22  the United States" does not preserve a federal claim.  *Gray v. Netherland*, 518 U.S. 152,

23  162-63 (1996).  Even if the basis of a federal claim is "self-evident" or if the claim would be

24  decided "on the same considerations" under state or federal law, the petitioner must make

25  the federal nature of the claim "explicit either by citing federal law or the decision of the

26  federal courts . . . ."  *Lyons*, 232 F.3d at 668.  A state prisoner does not fairly present a claim

27  to the state court if the court must read beyond the pleadings filed in that court to discover

28  the federal claim.  *Baldwin*, 541 U.S. at 27.

1    In sum, "a petitioner fairly and fully presents a claim to the state court for purposes of

2  satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2)

3  through the proper vehicle, and (3) by providing the proper factual and legal basis for the

4  claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (citations omitted).

5    A habeas petitioner's claims may be precluded from federal review in either of two

6  ways.  First, a claim may be procedurally defaulted in federal court if it was actually raised

7  in state court but found by that court to be defaulted on state procedural grounds such as

8  waiver or preclusion.  *Ylst v. Nunnemaker*, 501 U.S. 797, 802-05 (1991); *Coleman*, 501 U.S.

9  at 729-30.  Thus, a state prisoner may be barred from raising federal claims that he did not

10  preserve in state court by making a contemporaneous objection at trial, on direct appeal, or

11  when seeking post-conviction relief.  *Bonin v. Calderon*, 59 F.3d 815, 842 (9th Cir. 1995)

12  (stating that failure to raise contemporaneous objection to alleged violation of federal rights

13  during state trial constitutes a procedural default of that issue); *Thomas v. Lewis*, 945 F.2d

14  1119, 1121 (9th Cir. 1991) (finding claim procedurally defaulted where the Arizona Court of

15  Appeals held that habeas petitioner had waived claims by failing to raise them on direct

16  appeal or in first petition for post-conviction relief.)  If the state court also addressed the

17  merits of the underlying federal claim, the "alternative" ruling does not vitiate the

18  independent state procedural bar.  *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Carringer*

19  *v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992) (state supreme court found ineffective assistance

20  of counsel claims "barred under state law," but also discussed and rejected the claims on the

21  merits, *en banc* court held that the "on-the-merits" discussion was an "alternative ruling"

22  and the claims were procedurally defaulted and barred from federal review).  A higher

23  court's subsequent summary denial of review affirms the lower court's application of a

24  procedural bar.  *Nunnemaker*, 501 U.S. at 803.

25    The second procedural default scenario arises when a state prisoner failed to present

26  his federal claims to the state court, but returning to state court would be "futile" because the

27  state courts' procedural rules, such as waiver or preclusion, would bar consideration of the

28  previously unraised claims.  *Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Beaty v. Stewart*,

303 F.3d 975, 987 (9th Cir. 2002); *State v. Mata*, 185 Ariz. 319, 322-27, 916 P.2d 1035, 1048-53 (1996); Ariz. R. Crim. P. 32.2(a) & (b); Ariz. R. Crim. P. 32.1(a)(3) (post-conviction review is precluded for claims waived at trial, on appeal, or in any previous collateral proceeding); 32.4(a); Ariz. R. Crim. P. 32.9 (stating that petition for review must be filed within thirty days of trial court's decision).  A state post-conviction action is futile where it is time-barred.  *Beaty*, 303 F.3d at 987; *Moreno v. Gonzalez*, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing untimeliness under Ariz. R. Crim. P. 32.4(a) as a basis for dismissal of an Arizona petition for post-conviction relief, distinct from preclusion under Rule 32.2(a)).  This type of procedural default is known as "technical" exhaustion because although the claim was not actually exhausted in state court, the petitioner no longer has an available state remedy.  *Coleman*, 501 U.S. at 732 ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no remedies any longer 'available' to him.").

In either case of procedural default, federal review of the claim is barred absent a showing of "cause and prejudice" or a "fundamental miscarriage of justice."  *Dretke v. Haley*, 541 U.S. 386, 393-94 (2004); *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To establish "cause," a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules.  *Id*.  The following objective factors may constitute cause: (1) interference by state officials, (2) a showing that the factual or legal basis for a claim was not reasonably available, or (3) constitutionally ineffective assistance of counsel.  *Id.*  Ordinarily, the ineffective assistance of counsel in collateral proceedings does not constitute cause because "the right to counsel does not extend to state collateral proceedings or federal habeas proceedings."  *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1306 (9th Cir. 1996).

Prejudice is actual harm resulting from the constitutional violation or error.  *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984).  To establish prejudice, a habeas petitioner bears the burden of demonstrating that the alleged constitutional violation "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional

1    dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982); *Thomas v. Lewis*, 945 F.2d

2    1119, 1123 (9th Cir. 1996).  Where petitioner fails to establish cause, the court need not

3    reach the prejudice prong.

4         A federal court may also review the merits of a procedurally defaulted claim if

5    petitioner demonstrates that failure to consider the merits of his claim will result in a

6    "fundamental miscarriage of justice."  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  A

7    "fundamental miscarriage of justice" occurs when a constitutional violation has probably

8    resulted in the conviction of one who is actually innocent.  *Id.*  To satisfy the "fundamental

9    miscarriage of justice" standard, petitioner must establish that it is more likely than not that

10   no reasonable juror would have found him guilty beyond a reasonable doubt in light of new

11   evidence.  *Schlup*, 513 U.S. at 327; 28 U.S.C. § 2254(c)(2)(B).  Even if petitioner asserts a

12   claim of actual innocence to excuse his procedural default of a federal claim, federal habeas

13   relief may not be granted absent a finding of an independent constitutional violation

14   occurring in the state criminal proceedings.  *Dretke*, 541 U.S. at 393-94.

15   **III.  Standard of Review**

16        This Court's consideration of the merits of Petitioner's claims is constrained by the

17   applicable standard of review set forth in 28 U.S.C. § 2254(d), as amended in 1996 by the

18   Antiterrorism and Effective Death Penalty Act ("AEDPA").  The ADEPA "modified a

19   federal habeas court's role in reviewing state prisoner applications in order to prevent

20   federal habeas 'retrials' and to ensure that state-court convictions are given effect to the

21   extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).  The standard in §

22   2254(d) is "meant to be" "difficult to meet." *Harrington v. Richter*, ___ U.S., ___ , 131 S.Ct.

23   770, 786 (2011).  Section "2254 stops short of imposing a complete bar on federal court

24   relitigation of claims already rejected in state court proceedings." *Id*. (citations omitted).

25   "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme

26   malfunction in the state criminal justice systems,' not a substitute for ordinary error

27   correction through appeal."  *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979)).

28

1    Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is

2    shown that the earlier state court's decision "was contrary to" federal law then clearly

3    established in the holdings of the United States Supreme Court, § 2254(d)(1); *Williams v.*

4    *Taylor*, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such

5    law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in

6    light of the record before the state court, § 2254(d)(2).  *Richter*, 131 S.Ct. at 785; *see also*

7    *Mancebo v. Adams*, 435 F.3d 977, 978 (9th Cir.  2006).  To determine whether a state court

8    ruling was "contrary to" or involved an "unreasonable application" of federal law, courts

9    look exclusively to the holdings of the Supreme Court which existed at the time of the state

10   court's decision.  *Richter*, 131 S.Ct. at 786 (citing *Renico v. Lett*, 559 U.S. ___ , ___, 130

11   S.Ct. 1855, 1866, 176 L.Ed.2d 678 (2010)).  The Ninth Circuit has acknowledged that it

12   cannot reverse a state court decision merely because that decision conflicts with Ninth

13   Circuit precedent on a federal constitutional issue.  *Brewer v. Hall*, 378 F.3d 952, 957 (9th

14   Cir. 2004); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir.  2003).  Even if the state court

15   neither explains its ruling nor cites United States Supreme Court authority, the reviewing

16   federal court must nevertheless examine Supreme Court precedent to determine whether the

17   state court reasonably applied federal law.  *Richter*, 131 S.Ct. at 784 (citing *Early v. Packer*,

18   537 U.S. 3, 8 (2003)).  The Supreme Court held in *Early*, and recently reaffirmed in *Richter*,

19   that citation to federal law is not required and that compliance with the habeas statute "does

20   not even require awareness of our cases, so long as neither the reasoning nor the result of the

21   state-court decision contradicts them." *Early*, 537 U.S. at 8; *Richter*, 131 S.Ct. at 784.

22   "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's

23   burden still must be met by showing there was no reasonable basis for the state to deny

24   relief.  This is so whether or not the state court reveals which of the elements in a multipart

25   claim it found insufficient, for § 2254(d) applies when a 'claim', not a component of one,

26   has been adjudicated." *Richter*, 131 S.Ct. at 784.

27   Under § 2254(d), a state court's decision is "contrary to" federal law if it applies a

28   rule of law "that contradicts the governing law set forth in [Supreme Court] cases or if it

1    confronts a set of facts that are materially indistinguishable from a decision of [the Supreme

2    Court] and nevertheless arrives at a result different from [Supreme Court] precedent." 

3    *Mitchell v. Esparza*, 540 U.S 12, 14 (2003) (citations omitted); *Williams*, 529 U.S. at 411.  A

4    state court decision is an "unreasonable application of" federal law if the court identifies the

5    correct legal rule, but unreasonably applies that rule to the facts of a particular case.

6    *Williams*, 529 U.S. at 405; *Brown v. Payton*, 544 U.S. 133, 141 (2005).   An incorrect

7    application of federal law does not satisfy this standard.  *Yarborough v. Alvarado*, 541 U.S.

8    652, 665-66 (2004) (stating that "[r]elief is available under § 2254(d)(1) only if the state

9    court's decision is objectively unreasonable.").  "A state court's determination that a claim

10   lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree on

11   the correctness of the state court's decision.'" *Richter*, 131 S.Ct. 786 (citing *Yarborough*,

12   541 U.S. at 664).  "'[E]valuating whether a rule application was unreasonable requires

13   considering the rule's specificity.  The more general the rule, the more leeway courts have in

14   reaching outcomes in case-by-case determination.'" *Richter*, 131 S.Ct. at 786 (citing

15   *Yarborough*, 541 U.S. at 664).

16        The habeas court presumes that the state court's factual determinations are correct

17   and petitioner bears the burden of rebutting this presumption by clear and convincing

18   evidence.  28 U.S.C. § 2254(e)(1) (stating that "a determination of factual issues made by a

19   State court shall be presumed to be correct.  The applicant shall have the burden of rebutting

20   the presumption of correctness by clear and convincing evidence."); *Williams v. Rhoades*,

21   354 F.3d 1101, 1106 (9th Cir. 2004).

22        Where a state court decision is deemed  "contrary to" or an "unreasonable application

23   of" clearly established federal law, the reviewing court must next determine whether it

24   resulted in constitutional error.  *Benn v. Lambert*, 283 F.3d 1040, 1052 n. 6 (9th Cir. 2002).

25   On habeas review, the court assesses the prejudicial impact of most constitutional errors by

26   determining whether they "had substantial and injurious effect or influence in determining

27   the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v.*

28   *United States*, 328 U.S. 750, 776 (1946)); *see also Fry v. Pliler*, 551 U.S. 112 (2007) (*Brecht*

1   standard applies whether or not the state court recognized the error and reviewed it for

2   harmlessness).

3   **IV.   Analysis**

4           **A.  Ground One**

5           In Ground One, Petitioner contends that he was denied his Fourteenth Amendment

6   right to Equal Protection, his Fifth and Sixth Amendment rights to a fair trial, and his Sixth

7   Amendment right to confrontation when the trial court refused to sever counts, and on a

8   theory of cross-admissible "other acts" joined counts involving multiple accusers without

9   first evaluating the credibility of the accusers as required by Arizona law and without

10  receiving expert testimony regarding gynecological procedures.  (Doc. 1 at 8; Doc. 5 at 7)

11  In his Memorandum of Points and Authorities, Petitioner asserts that the State court's failure

12  to follow the proper procedure for joinder under Arizona law violated the Due Process

13  Clause.  (Doc. 5 at 7-9)

14          **1.  Exhaustion and Procedural Bar**

15          As Respondents assert, and the record confirms, the only federal claim asserted in

16  Ground One that Petitioner properly presented to the State courts is the alleged denial of his

17  Sixth Amendment right to confrontation during pretrial proceedings. On direct appeal,

18  Petitioner asserted that:

19          The trial court abused its discretion and reversibly erred in joining counts
            in this sex offense prosecution on the theory that all counts would be
20          cross-admissible as "other acts," pursuant to Rule 404(c) of the Arizona
            Rules of Criminal Evidence, first because before ruling the trial court did
21          not personally evaluate the credibility of the complainants as required by
            *State v. Aguilar*, [209 Ariz. 40, 97 P.3d 856 (Ariz. 2004)]; and secondly,
22          because before ruling, the court did not receive expert testimony on the
            limits of proper touching in gynecological procedures.
23
    (Respondents' Exh. B at 20)  In support of this claim, Petitioner argued that the requirement
24
    of determining witness credibility in joinder hearings, found in Arizona Rule of Evidence
25
    404(c), squares with the Confrontation Clause requirement enunciated in *Crawford v.*
26
    *Washington*, 541 U.S. 36 (2004).  (Respondents' Exh. B at 28-29)  During trial, however,
27

28

1    Petitioner only asserted that his right to confrontation precluded the trial court's *in camera*

2    review of the victims' interviews in reconsidering the severance ruling:

> Defendant objects to the cross-examination of these records because they
> are wholesale hearsay, not subject to cross-examination, and deny the
> Defendant his right of confrontation.

5    (Respondents' Exh. A, Item 164)

6         The Arizona Court of Appeals found that Petitioner had failed to renew a motion to

7    sever at the end of trial thereby waiving the severance issue absent fundamental error.

8    (Respondents' Exh. D at 10)   The appellate court rejected Petitioner's Confrontation Clause

9    argument stating that "[t]he right of confrontation and cross-examination is a trial right, not a

10   right involving pre-trial issues." (Respondents' Exh. D at 13 n. 4)  Accordingly, the

11   appellate court found that the trial court's failure to hold a joinder hearing did not violate the

12   Confrontation Clause. (*Id.*)

13        The record reflects that the only federal claim which Petitioner fairly presented and

14   properly exhausted in state court was the denial of his Sixth Amendment right to

15   confrontation.  Petitioner did not present the due process or other components of Ground

16   One to the State courts.  Accordingly, those claims are technically exhausted and

17   procedurally barred, because a return to state court to present those claims would be futile

18   because they would be procedurally barred pursuant to Arizona law.  First, Petitioner is

19   time-barred under Arizona law from raising these claims in a successive petition for post-

20   conviction relief  because the  time for filing a notice of post-conviction relief has long

21   expired. *See* Ariz.R.Crim.P. 32.1 and 32.4 (a petition for post-conviction relief must be filed

22   "within ninety days after the entry of judgment and sentence or within thirty days after the

23   issuance of the order and mandate in the direct appeal, whichever is later.")  Although Rule

24   32.4 does not bar dilatory claims if they fall within the category of claims specified in

25   Ariz.R.Crim.P 32.1(d) through (h), Petitioner has not asserted that any of these exceptions

26   apply to him.  Moreover, a state post-conviction action is futile where it is time-barred.

27   *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002); *Moreno v. Gonzalez*, 116 F.3d 409, 410

28   (9th Cir. 1997) (recognizing untimeliness under Ariz. R. Crim. P. 32.4(a) as a basis for

1    dismissal of an Arizona petition for post-conviction relief, distinct from preclusion under

2    Rule 32.2(a)).

3          Furthermore, under Rule 32.2(a) of the Arizona Rules of Criminal Procedure, a

4    defendant is precluded from raising claims that could have been raised on direct appeal or in

5    any previous collateral proceeding. *See Krone v. Hotham*, 181 Ariz. 364, 366, 890 P.2d

6    1149, 1151 (Ariz. 1995) (capital defendant's early petition for post-conviction relief raised

7    limited number of issues and waived other issues that he could have then raised, but did

8    not); *State v. Curtis*, 185 Ariz. 112,113, 912 P.2d 1341, 1342 (Az. Ct. App. 1995)

9    ("Defendants are precluded from seeking post-conviction relief on grounds that were

10   adjudicated, or could have been raised and adjudicated, in a prior appeal or prior petition for

11   post-conviction relief."); *State v. Berryman*, 178 Ariz. 617, 624, 875 P.2d 850, 857 (Az. Ct.

12   App. 1994) (defendant's claim that his sentence had been improperly enhanced by prior

13   conviction was precluded by defendant's failure to raise issue on appeal).   The federal

14   claims asserted in Ground One could have, and should have, been properly raised on post-

15   conviction review.  Accordingly, the State court would find those claims procedurally

16   barred.

17         As set forth above, all but Petitioner's Confrontation Clause claim asserted in Ground

18   One are procedurally defaulted and barred from federal habeas review absent a showing of

19   "cause and prejudice" or a "fundamental miscarriage of justice."  Petitioner does not assert

20   any basis to overcome the procedural bar.  (Doc. 14)   Accordingly, the Court will not

21   consider the merits of the defaulted and procedurally barred claims.

22         **2. Analysis of Confrontation Clause Claim**

23         As set forth above, the State of Arizona filed two indictments against Petitioner

24   involving 35 victims for illegal conduct from 1986 to 2001.  As to both indictments, the

25   State filed an allegation of multiple offenses not committed on the same occasion pursuant

26   to A.R.S. § 13-702.02.  (Respondents' Exh. A, Item 27)   The State moved to consolidate the

27   indictments and Petitioner moved to sever the counts in both indictments.  (Respondents'

28   Exh. A, Item 66)   The trial court denied the State's motion and granted Petitioner's motion.

1   The State subsequently filed a motion for reconsideration.  (*Id*.)  Citing Arizona Rule of

2   Evidence 404(c), the State asked the court to review the sealed transcripts of the police

3   interviews with the victims in both cases.  (Respondents' Exh. D at 3)  The State also

4   requested an evidentiary hearing to consider expert testimony.   Over Petitioner's objection,

5   after reviewing the transcripts of the interviews, the court, without holding an evidentiary

6   hearing, granted the State's motion to reconsider and ordered the two cases consolidated.

7   (Respondents' Exh. A, Item 66, Item 164)

8          In Ground One of the Petition for Writ of Habeas Corpus, Petitioner argues that the

9   trial court's determination to consolidate the two cases without conducting an evidentiary

10  hearing, violated his Sixth Amendment right to confrontation.  Petitioner argues that Arizona

11  law, including Arizona Rule of Evidence 404(c) and *State v. Aguilar*, 209 Ariz. 40, 97 P.2d

12  856 (Ariz. 2004) required an evidentiary hearing.  (Doc. 5 at 3-6)   To the extent that Ground

13  One asserts a violation of Arizona law, such a claim is not cognizable on federal habeas

14  corpus review.  28 U.S.C. § 2254(a) (permitting federal court to consider a habeas petition

15  only on the ground that the prisoner is "in custody in violation of the Constitution or laws or

16  treaties of the United States.").  Title 28 U.S.C. § 2254(a) defines the scope of review for

17  federal habeas corpus petitions:

18          The Supreme Court, a Justice thereof, a circuit judge, or a district court shall
            entertain an application for a writ of habeas corpus in behalf of a person in
19          custody pursuant to the judgment of a State court only on the ground that he is
            in custody in *violation of the Constitution or law or treaties of the United*
20          *States.*

21  28 U.S.C. § 2254(a) (emphasis added).  Accordingly,  "[a] habeas petition must allege the

22  petitioner's detention violates the constitution, a federal statute or a treaty."  *Franzen v.*

23  *Brinkman*, 877 F.2d 26 (9th Cir. 1989), *cert. denied*, *Franzen v. Deeds*, 493 U.S. 1012

24  (1989).  Thus, the Court will not consider Petitioner's claim that the manner in which the

25  trial court determined the joinder issue violated Arizona law.

26          The Court will, however, consider Petitioner's Sixth Amendment Confrontation

27  Clause claim which is properly before it on habeas corpus review.  Petitioner asserts that

28  manner in which the trial court made the severance/joinder determination violated the Sixth

1   Amendment's Confrontation Clause requirement as enunciated in *Crawford v. Washington*,

2   541 U.S. 36 (2004).  After initially denying joinder, the trial court granted the State's motion

3   for reconsideration and, without an evidentiary hearing, found that 67 counts would be

4   joined for trial under Arizona Rule of Evidence 404(c).  (Respondents' Exh. A, Item 66)

5   The court's ruling was based on the consideration of transcripts of interviews with 35 of

6   Petitioner's patients. (*Id.*)  Petitioner argues that the trial court was required to conduct an

7   evidentiary hearing in accordance with Arizona Rule of Evidence 404(c) before determining

8   whether to join multiple counts.  (Doc. 5 at 8)  Arizona Rule of Evidence 404(c) requires

9   that the court find by clear and convincing evidence that petitioner committed the acts

10  charged and that his conduct showed a propensity for sexual aberration.  *Id*.  Petitioner

11  contends that a trial court can only make this assessment by considering the accusers'

12  testimony at a hearing and that the requirement for such a hearing is set forth by the Arizona

13  Supreme Court in *Aguilar*, 209 Ariz 40, 97 P.2d 866.   Without an evidentiary hearing, the

14  trial court found that 67 counts would be joined for trial under Arizona Rule of Evidence

15  404(c).  (Respondents' Exh. A, Item 66)   The court's ruling was based on the consideration

16  of transcripts of interviews with 35 of Petitioner's  patients. (*Id.*)   The court found that the

17  interview transcripts

> reveal accounts of what can be considered aberrant conduct under the circumstances during which the breast and pelvic examinations of the patients occurred.  The manner and circumstances under which these alleged acts of sexual misconduct occurred as described in the patient interviews are corroborated by the Defendant's employees in their interviews. The incidents, as they vary from patient to patient, appear similar in nature.
>
> Upon careful review of the transcripts of these interviews this court now finds: that the State has satisfied its burden under Rule 404(c) that the evidence of the alleged acts of sexual misconduct is sufficient for a trier of fact to find that the Defendant committed the other acts; that the commission of the other acts provides a reasonable basis to infer that the Defendant had a character trait giving rise to an aberrant sexual propensity to commit the crime(s) charged; and weighing the factors under Rule 404(c)(1)(C), this court does not find that the probative value of introducing the evidence of the other acts . . . is substantially outweighed by the danger of unfair prejudice to the Defendant, confusion of the issues or misleading the jury.

- 15 -

1   (Respondents' Exh. A, Item 66)   Petitioner argues that because the state court did not follow

2   the proper procedure under Arizona law - which required an evidentiary hearing during

3   which the accusers testified and were subject to cross-examination - joinder of numerous

4   counts and accusers violated the Sixth Amendment's Confrontation Clause.  (Doc. 5 at 7-10)

5         The Confrontation Clause protects a defendant from unreliable hearsay evidence

6   being presented against him during trial. *See* U.S. Const. Amend. VI. The Confrontation

7   Clause of the Sixth Amendment specifically provides that "[i]n all criminal prosecutions, the

8   accused shall enjoy the right . . . to be confronted with the witnesses against him." *Id*. The

9   Sixth Amendment's Confrontation Clause was made applicable to the states through the Due

10  Process Clause of the Fourteenth Amendment. *Melendez-Diaz v. Massachusetts*, ___ U.S.

11  ___, 129 S.Ct. 2527, 2531 (2009) (citing *Pointer v. Texas*, 380 U.S. 400, 403 (1965)). The

12  Sixth Amendment's Confrontation Clause "provides two types of protections for a criminal

13  defendant: the right to physically face those who testify against him, and the right to conduct

14  cross-examination." *Pennsylvania v. Ritchie,* 480 U.S. 39, 51 (1987).

15        In *Crawford v. Washington*, 541 U.S. 36, 68 (2004), the United States Supreme Court

16  held that the protections of the Confrontation Clause apply only to testimonial statements.

17  The *Crawford* court observed that, "[w]here testimonial statements are involved, we do not

18  think the Framers meant to leave the Sixth Amendment's protections to the vagaries of the

19  rules of evidence, much less to amorphous notions of 'reliability.' " *Id*. at 61. The *Crawford*

20  court thus found that the Confrontation Clause bars the introduction of out-of-court

21  statements which are testimonial in nature, unless "the declarant is unavailable, and only

22  where the defendant has had a prior opportunity to cross-examine." *Id*. at 59.

23        The Supreme Court has described the right to confrontation as "a *trial* right designed

24  to prevent improper restrictions on the types of questions that defense counsel may ask

25  during cross-examination."  *Id*. at 52 (emphasis in original).  *See also California v. Green*,

26  399 U.S. 149, 157 (1970) (stating that "it is this literal right to 'confront' witnesses at the

27  time of trial that forms the core of the values furthered by the Confrontation Clause.");

28  *Barber v. Page*, 390 U.S. 719, 725 (1968) (explaining that "[t]he right to confrontation is

1    basically a trial right.").  The Supreme Court typically finds no Confrontation Clause

2    violation when the alleged restriction on cross-examination did not occur at trial.  *See*

3    *McCray v. Illinois*, 386 U.S. 300, 311-13 (1967) (finding no Confrontation Clause violation

4    where defendant was denied the opportunity to discover an informant's name at a pretrial

5    hearing).

6         The Confrontation Clause, and thus the Supreme Court's decision in *Crawford*, is not

7    implicated in this case where Petitioner contends that the trial court impeded his right of

8    confrontation by failing to conduct a pretrial hearing where the victims were subject to

9    cross-examination to resolve a joinder issue because the Confrontation Clause does not

10   confer a right to cross-examination during such a pretrial hearing. *See Id.*

11        Because Petitioner did not have a Sixth Amendment right to cross-examine witnesses

12   during a pre-trial joinder hearing, the State court's rejection of Petitioner's Confrontation

13   Clause claim was not contrary to, or an unreasonable application of, clearly established

14   federal law.  28 U.S.C. § 2254; *Williams*, 529 U.S. at 412-13.  Accordingly, Petitioner is not

15   entitled to relief on Ground One.

16        **B.  Ground Two**

17        In Ground Two, Petitioner argues that "the testimony of Dr. Ann Burgess, which was

18   inadmissible under Arizona law, usurped the function of the jury, lowered the prosecution's

19   burden of proof and deprived Petitioner of his Fourteenth Amendment right to Equal

20   Protection of Law and Sixth Amendment right to a fair trial on the issues presented by the

21   evidence." (Doc. 1 at 9, Doc. 5 at 10)   Petitioner's claim is based on Dr. Burgess'

22   testimony regarding the responses and reactions of sexual abuse victims to "sexual abuse in

23   a physician-patient setting."  (Respondents' Exh. D at 13-14)   Petitioner moved to preclude

24   the testimony of Dr. Burgess and another expert on the ground that their opinions would

25   constitute inadmissible sex-offender profile evidence.  (Respondents' Exh. A, Item 224)

26   The trial court denied the motion as to Dr. Burgess.  (Respondents' Exh. D at 14)

27        On direct appeal, Petitioner argued that:

28        The trial court abused its discretion and reversibly erred when it

- 17 -

1   permitted Dr. Ann Burgess to testify about the responses of sexual
    abuse victims because, in the end, this amounted to nothing more than
2   prohibited "rape trauma syndrome" and "offender profile" evidence.

3   (Respondents' Exh. B at 32-36)   Petitioner's claim was based solely on Arizona law. (*Id.*)

4   The appellate court rejected this claim, explaining that:

5       Generally, it is a decision within the discretion of the trial court whether
        expert testimony will aid the jury in understanding an issue outside
6       their common experience under Evidence Rule 702.  *State v. Moran*, 151
        Ariz. 378, 381, 728 P.2d 248, 251 ([Ariz.] 1986).  *Id.*  Similarly, it is
7       within the discretion of the court to weigh the probative value of the
        testimony against the danger of unfair prejudice under Evidence Rule 403.
8
9       Dr. Burgess' testimony did not constitute rape-trauma-syndrome evidence
        or offender profile evidence.  Rather, she testified about the characteristic
10      response of sexual-abuse victims to explain behavior that might otherwise
        seem inconsistent or questionable to a juror.  Such expert testimony of a
11      generalized nature has been held admissible to aid the jury in understanding
        the issues.

12  (Respondents' Exh. D at 15)

13      Although Petitioner never presented a federal challenge to the trial court's ruling

14  regarding Dr. Burgess' testimony to the state courts, Petitioner now argues that the trial

15  court's ruling "deprived Petitioner of his Fourteenth Amendment right to Equal Protection of

16  Law, and his Sixth Amendment right to a fair trial."  (Doc. 1 at 9; Doc. 5 at 10-11)   He also

17  argues that the evidence was "so unduly prejudicial that it render[ed] the trial fundamentally

18  unfair," in violation of the Due Process Clause.  (Doc. 5 at 11)   However, Petitioner did not

19  present a federal claim to the state court.  Accordingly, his federal claims challenging Dr.

20  Burgess' testimony are technically exhausted and procedurally barred, because a return to

21  state court to present those claims would be futile because it be procedurally barred pursuant

22  to Arizona law.  First, Petitioner is time-barred under Arizona law from raising these claims

23  in a successive petition for post-conviction relief  because the  time for filing a notice of

24  post-conviction relief has long expired. *See* Ariz.R.Crim.P. 32.1 and 32.4 (a petition for

25  post-conviction relief must be filed "within ninety days after the entry of judgment and

26  sentence or within thirty days after the issuance of the order and mandate in the direct

27  appeal, whichever is later.")  Although Rule 32.4 does not bar dilatory claims if they fall

28  within the category of claims specified in Ariz.R.Crim.P 32.1(d) through (h), Petitioner has

1   not asserted that any of these exceptions apply to him.  Moreover, a state post-conviction

2   action is futile where it is time-barred. *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002);

3   *Moreno v. Gonzalez*, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing untimeliness under

4   Ariz. R. Crim. P. 32.4(a) as a basis for dismissal of an Arizona petition for post-conviction

5   relief, distinct from preclusion under Rule 32.2(a)).

6           Furthermore, under Rule 32.2(a) of the Arizona Rules of Criminal Procedure, a

7   defendant is precluded from raising claims that could have been raised on direct appeal or in

8   any previous collateral proceeding. *See Krone v. Hotham*, 181 Ariz. 364, 366, 890 P.2d

9   1149, 1151 (1995) (capital defendant's early petition for post-conviction relief raised limited

10  number of issues and waived other issues that he could have then raised, but did not); *State*

11  *v. Curtis*, 185 Ariz. 112,113, 912 P.2d 1341, 1342 (Ariz.Ct.App. 1995) ("Defendants are

12  precluded from seeking post-conviction relief on grounds that were adjudicated, or could

13  have been raised and adjudicated, in a prior appeal or prior petition for post-conviction

14  relief."); *State v. Berryman*, 178 Ariz. 617, 624, 875 P.2d 850, 857 (Ariz.Ct.App. 1994)

15  (defendant's claim that his sentence had been improperly enhanced by prior conviction was

16  precluded by defendant's failure to raise issue on appeal).   The federal claims asserted in

17  Ground Two could have, and should have, been properly raised on post-conviction review.

18  Accordingly, the State court would find those claims procedurally barred.

19          As set forth above, Petitioner's federal claims asserted in Ground Two are

20  procedurally defaulted and barred from federal habeas review absent a showing of "cause

21  and prejudice" or a "fundamental miscarriage of justice."  Petitioner does not assert any

22  basis to overcome the procedural bar.  (Doc. 14)   Accordingly, the Court will not consider

23  the federal claims asserted in Ground Two.

24           Moreover, even though Petitioner cites to several Constitutional provisions in

25  Ground Two, his argument focuses on Arizona law.   The essence of Ground Two is that the

26  trial court's ruling regarding Dr. Burgess' testimony violated Arizona law.  (Doc. 1 at 9; Doc.

27  5 at 10-11)  Petitioner's challenge to the state court's evidentiary ruling is a state law claim

28  which is not subject to review by this Court.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68

1   (1991) (explaining that "it is not the province of a federal habeas court to reexamine state-

2   court determinations on state-law questions.").  The admission of evidence is not subject to

3   federal habeas review unless a specific constitutional guarantee is violated or the error

4   renders the trial fundamentally unfair in violation of the due process clause.  *Colley v.*

5   *Sumner*, 784 F.2d 984, 990 (9th Cir. 1986).  Failure to comply with state evidentiary rules

6   does not warrant habeas relief on due process grounds.  *Jammal v. Van de Kamp*, 926 F.2d

7   918, 919 (9th Cir. 1991).  Federal habeas relief is does not lie for alleged violations of state

8   law or procedure or for alleged error in the interpretation or application of state law.  *Estelle*,

9   502 U.S. at 67-68; *Peltier v. Wright*, 15 F.3d 860, 861-62 (9th Cir. 1994).

10          In view of the foregoing, Petitioner is not entitled to relief on Ground Two.

11      **C. Ground Three**

12          In Ground Three, Petitioner argues that he was denied his Fifth, Sixth, and Fourteenth

13   Amendment rights to due process and to present a defense when the court refused to permit

14   defense expert Elizabeth Loftus to testify about the risk of implanted memories.  (Doc. 1 at

15   10; Doc. 5 at 11-12)   Before trial, defense counsel filed a Supplemental Notice of Witnesses

16   to include Dr. Loftus, an expert in memory "creation, contamination, and malleability."

17   (Respondents' Exh. A, Item 208)   The State moved to preclude Dr. Loftus from "offering

18   any opinion or testimony that comments on the credibility of specific victims or witnesses"

19   and from comparing her theories of memory to hypotheticals drawn from the facts of the

20   case.  (Respondents' Exh. A, Item 533)   The trial court granted the State's motion and ruled

21   that Dr. Loftus could not answer questions based on the specific facts of the case.

22   (Respondents' Exh. D at 16)   After Dr. Loftus testified, Petitioner made an offer of proof as

23   to the precluded testimony.  (Respondents' Exh. D at 16)   Petitioner indicated that Dr. Loftus

24   would have testified that she had reviewed the transcripts of the interviews taken by two of

25   the police detectives and that, as to particular witnesses, the detectives had supplied

26   information and made suggestive comments to them.  (*Id.*)  Petitioner "further indicated that

27   Dr. Loftus would have opined that the interview process had been biased and that there was a

28   risk that the witnesses' memories had thus been altered or contaminated."  (*Id.*)

On direct appeal, Petitioner argued that:

> The trial court reversibly erred when it barred the defense expert, Dr. Elizabeth Loftus, from offering testimony about the risk of implanted memories, and in so doing, denied [Petitioner] due process of law, contrary to the protections of the Fifth and Fourteenth Amendments of the United States Constitution and Article 2 § 4 of the Arizona Constitution.

(Respondents' Exh. B at 37)   Although Petitioner cited the Fifth and Fourteenth Amendments of the U.S. Constitution, his argument was limited to state law and cited only state law cases.  (Respondents' Exh. B at 39-41)   Likewise, the appellate court limited its review to state law and rejected Petitioner's claim.  (Respondents' Exh. D at 17)  The appellate court stated that:

> In this case, the trial court correctly allowed limited, general testimony concerning the risks of suggestive interview techniques to explain the possibility that the victims may have had false memories.  However, because such an expert cannot give an opinion as to the veracity or reliability of a witness' testimony, the trial court did not err in prohibiting Dr. Loftus from testifying about the possibility of implanted memories of particular victims.

(Respondents' Exh. D at 17)

Contrary to Petitioner's assertion in his Reply, his citation to Arizona cases which discussed due process under the Arizona Constitution was not sufficient to fairly present a federal Due Process  claim to the Arizona Court of Appeals.  *See Reese*, 541 U.S. at 28 (stating that a reference to ineffective assistance of counsel does not alert the court to federal nature of the claim); *Castillo*, 399 F.3d at 1000 (finding federal claim unexhausted where argument section of briefing did not include language presenting a federal due process argument to the appellate court.).  Although Petitioner asserted that he was denied due process under the Fifth and Fourteenth Amendment in the heading and concluding paragraph, he did not argue his claim on federal grounds.  Rather, the body of the argument presented only a state law claim.  A claim is "fairly presented" in state court only if a petitioner has described both the operative facts and the federal legal theory on which his claim is based. *Reese*, 541 U.S. at 28.  Contrary to Petitioner's assertion, it is not enough that all of the facts necessary to support the federal claim were before the state court or that a "somewhat similar" state law claim was raised.  *Reese*, 541 U.S. at 28.

1   Petitioner's federal claims presented in Ground Three are procedurally barred, because

2 Petitioner failed to properly present those claims to the Arizona courts and a return to state

3 court to present those claims would be futile.  Petitioner is time-barred from raising the

4 foregoing claims in a successive petition for post-conviction relief because the time for filing

5 a notice of post-conviction relief has long expired.  *See* Ariz.R.Crim.P. 32.1 and 32.4 (a

6 petition for post-conviction relief must be filed "within ninety days after the entry of

7 judgment and sentence or within thirty days after the issuance of the order and mandate in the

8 direct appeal, whichever is later.")  Likewise, Petitioner is time-barred from seeking appellate

9 review because Arizona Rules of Criminal Procedure 32.9(c) and 31.19(a) require petitions

10 for review from the denial of a petition for post-conviction relief, and petitions for review to

11 be filed within 30 days after the final decision of the trial court or the court of appeals.  Thus,

12 Petitioner is time-barred from seeking further review in the state court.

13   Additionally, under Rule 32.2(a) of the Arizona Rules of Criminal Procedure, a

14 defendant is precluded from raising claims that could have been raised on direct appeal or in

15 any previous collateral proceeding.  *See State v. Berryman,* 178 Ariz. 617, 624, 875 P.2d 850,

16 857 (Ariz. Ct. App. 1994) (defendant's claim that his sentence had been improperly enhanced

17 by prior conviction was precluded by defendant's failure to raise issue on appeal).

18   Because the claims asserted in Ground Three are procedurally defaulted, federal

19 habeas corpus review is only available if Petitioner establishes cause and prejudice or a

20 fundamental miscarriage of justice.  To establish "cause", a petitioner must establish that

21 some objective factor external to the defense impeded his efforts to comply with the state's

22 procedural rules.  *Murray,* 477 U.S. at 488-492.  The following objective factors may

23 constitute cause: (1) interference by state officials, (2) a showing that the factual or legal

24 basis for a claim was not reasonably available, or (3) constitutionally ineffective assistance of

25 counsel.  *Id.* Prejudice is actual harm that results from the constitutional violation or error.

26 *Magby v. Wawrzaszek,* 741 F.2d 240, 244 (9th Cir. 1984).  Where petitioner fails to establish

27 cause for his procedural default, the court need not consider whether petitioner has shown

28 actual prejudice resulting from the alleged constitutional violations.  *Smith v. Murray,* 477

U.S. 527, 533 (1986).  Petitioner offers no argument sufficient to overcome the procedural bar.  (Doc. 14)  Because Petitioner has not established any basis to excuse his procedural default, Petitioner's claims asserted in Ground Three are barred from federal habeas corpus review.

### D.  Ground Four

In Ground Four, Petitioner asserts that he "was denied his Sixth Amendment right to confrontation and a public trial when the court permitted one of his accusers to testify by way of videotape without any showing she was legally unavailable."  (Doc. 1 at 11; Doc. 5 at 13)  Victim S.C. filed a motion to quash her trial subpoena on the ground that her mental and emotional condition made it extremely difficult for her to testify.  (Respondents' Exh. D at 17-18; Exh. A, Item 349)   The trial court denied the motion to quash, but ordered S.C. to appear at a videotaped deposition.  (*Id*.; Exh. N at 9)   Petitioner unsuccessfully objected to the video deposition contending that such a procedure violated his Sixth Amendment right to confrontation.  (Respondents' Exh. A, Item 367; Exh. D at 18; Exh. N at 4-10)   After S.C.'s deposition, during which she was cross-examined by defense counsel, Petitioner memorialized for the record, that she did not appear fragile during her testimony, and that the trial court indicated that it would reconsider its ruling.  (Respondents' Exh. D at 18-20; Exh. B at 42-47)   The next day, although S.C. was available, Petitioner did not request that she testify in person.  Instead, the trial court played the videotape for the jury, and Petitioner did not object.  (Respondents' Exh. D at 20)   After the videotaped testimony was played for the jury, the trial court required S.C. to respond, in person, to the jury's questions.  The court also allowed Petitioner's counsel to ask follow-up questions.  (Respondents' Exh. D at 20; Exh. O at 59-73)

On direct appeal, Petitioner argued that:

The trial court reversibly erred and denied [Petitioner] his rights to confrontation and a public trial secured him by the Sixth Amendment to the United States Constitution and Article 2, § 24 of the Arizona Constitution when it permitted the witness [S.C.] to testify by means of a video-taped deposition, without first establishing that [she] was unavailable to testify.

1   (Respondents' Exh. B at 42)   The appellate court found that Petitioner had waived the issue

2   regarding the videotaped testimony because he failed to make "an affirmative decision

3   regarding the court's offer [to reconsider its ruling and] did not further object to the

4   presentation of the videotape at trial. (Respondents' Exh. D at 20)   The appellate court

5   further found that Petitioner had neither established fundamental error or prejudice.   (*Id.*)

6   Finally, the appellate court found that "[n]othing in the record suggests that the use of S.C.'s

7   videotaped deposition followed by the jury's and counsel's questions denied [Petitioner] the

8   right to a fair trial."   (*Id.* at 20-21)   Petitioner has not shown that the State court's decision

9   was contrary to, or an unreasonable application of, clearly established federal law.

10          The Sixth Amendment's Confrontation Clause "provides two types of protections for a

11   criminal defendant: the right to physically face those who testify against him, and the right to

12   conduct cross-examination."   *Pennsylvania v. Ritchie,* 480 U.S. 39, 51 (1987).   The Supreme

13   Court has described the right to confrontation as "a trial right designed to prevent improper

14   restrictions on the types of questions that defense counsel may ask during cross-

15   examination."   *Id.* at 52 (emphasis in original).   *See also California v. Green*, 399 U.S. 149,

16   157 (1970) (stating that "it is this literal right to 'confront' witnesses at the time of trial that

17   forms the core of the values furthered by the Confrontation Clause.").   "The central concern

18   of the Confrontation Clause is to ensure the reliability of the evidence against a criminal

19   defendant by subjecting it to rigorous testing in the context of an adversary proceeding before

20   the trier of fact."   *Maryland v. Craig*, 497 U.S. 836, 845 (1990).   Face-to-face, in-court

21   testimony insures that the witness' statements will be given under oath and subject to cross-

22   examination, but also "permits the jury that is to decide the defendant's fate to observe the

23   demeanor of the witness in making his statement, thus aiding the jury in assessing his

24   credibility."   *Craig*, 497 U.S. at 846.

25          The Confrontation Clause's face-to-face requirement, however, "must occasionally

26   give way to considerations of public policy and the necessities of the case."   *Craig*, 497 U.S.

27   at 844 (citation omitted).   If there is a showing of "particularized need" to afford special

28   protection to a testifying witness at the expense of the defendant's right to have a jury

1    personally observe their testimony, then that procedure may be followed.  *Craig*, 497 U.S. at

2    850) (right to confront a witness may be satisfied absent face-to-face confrontation "where

3    denial of such confrontation is necessary to further an important public policy" and where the

4    reliability of the testimony is assured.).

5         Here, the trial court found that requiring S.C. to testify in open-court would "likely . . .

6    be detrimental to her health and well-being."  (Respondents' Exh. A, Item 349)  This finding

7    was based on evidence presented by S.C.'s psychiatrist that she would be severely

8    traumatized, and possibly require hospitalization, if forced to testify.  (Respondents' Exh. M

9    at 3-29)  S.C. had recently discovered that her husband was sexually abusing her two

10   children - ages seven and fourteen - and she was consequently getting a divorce.  (*Id*. at 6-7,

11   19)  These events were "triggering old memories and trauma," and S.C. was having "panic

12   attacks," and "a lot of trouble sleeping."  (*Id*.)  These factors, combined with S.C's history of

13   nervous breakdowns, one that resulted in institutionalization, posed a "real risk" that she

14   would "breakdown in the process of testifying."  (*Id*. at 12, 20-21)  At trial, Petitioner's

15   counsel noted that, if S.C. had "some sort of breakdown" during his cross-examination, it

16   would create a "hugely prejudicial scene in front of the jury."  (*Id*. at 12, 16)

17        The record reflects that the trial court made "particularized findings" which were

18   sufficient to justify the special protection afforded to S.C.  *See Craig*, 497 U.S. at 852-52

19   (holding that Maryland statute that authorized use of one-way closed circuit television to

20   transmit child victims' testimony to jury did not violated the Confrontation Clause where

21   judge, jury, and defendant were able to view the witness' demeanor by video monitor).

22   Additionally, S.C. testified under oath in the courtroom, in Petitioner's presence, and was

23   cross-examined by defense counsel during the deposition.  (Respondents' Exh. N at 9; Exh.

24   O at 59-60; Exh. B at 42-47)  During trial, the court played the videotaped testimony.

25   (Respondents' Exh. O at 59-60)  Thereafter, S.C. appeared in person before the jury, under

26   oath.  She answered the jurors' questions and defense counsel's follow-up questions.

27   (Respondents' Exh. O at 62-73)  The jurors had sufficient opportunity to observe S.C.'s

28   demeanor and assess her credibility in person and on the videotape.  Petitioner has not shown

1  that the state court's conclusion that the manner in which S.C. testified comported with the

2  Confrontation Clause was either contrary to, or an unreasonable application of, federal law.

3  **V. Conclusion**

4      For the foregoing reasons, the Petition for Writ of Habeas Corpus should be denied.

5      Accordingly,

6      **IT IS RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus (Doc.

7  1) be **DENIED.**

8      **IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to

9  proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is

10  justified by a plain procedural bar and jurists of reason would not find the procedural ruling

11  debatable and because Petitioner has not made a substantial showing of the denial of a

12  constitutional right.  This recommendation is not an order that is immediately appealable to

13  the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal

14  Rules of  Appellate Procedure, should not be filed until entry of the District Court's

15  judgment.  The parties shall have (14) fourteen days from the date of service of a copy of this

16  recommendation within which to file specific written objections with the Court.  *See,* 28

17  U.S.C. § 636(b)(1); Rules 72, 6, Federal Rules of Civil Procedure.

18      Thereafter, the parties have (14) fourteen days within which to file a response to the

19  objections.  Failure timely to file objections to the Magistrate Judge's Report and

20  Recommendation may result in the acceptance of the Report and Recommendation by the

21  District Court without further review.  *See United States v. Reyna-Tapia*, 328 F.3d 1114,

22  1121 (9th Cir. 2003).  Failure timely to file objections to any factual determinations of the

23  Magistrate Judge may be considered a waiver of a party's right to appellate review of the

24  findings of fact in an order or judgment entered pursuant to the Magistrate Judge's

25  recommendation. *See*, Rule 72, Federal Rules of Civil Procedure.

26      DATED this 9th day of May, 2011.

27

28

Lawrence O. Anderson
United States Magistrate Judge